## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| 3BTECH, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Court No. 21-00026 |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:

TAYLOR R. BATES
Attorney
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

MIKKI COTTET
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: 202-307-0962
Facsimile: 202-514-7965
E-mail: Mikki.Cottet@usdoj.gov

October 18, 2024

Attorneys for Defendants

# TABLE OF CONTENTS

DISCUSSION ........................................................................................................... 3

   I.  Standard Of Review ...................................................................................... 3

  II.  The Reiner And Benjamin Declarations Are Not Additional Expert Reports ................. 4

     A.  The Expert Declarations Comport With The Orders And Rules Of The Court .......... 5

     B.  The Reiner And Benjamin Declarations Incorporate The Opinions Expressed In Their Expert Reports And Relevant Testimony From Their Depositions ........................... 12

         1.  Reiner Declaration ........................................................................... 13

         2.  Benjamin Declaration ....................................................................... 21

  III.  The Sullivan Declaration Is Percipient Witness Testimony And Should Not Be Stricken ...................................................................................................... 24

  IV.  The Government's Additional Rule 56.3 Statement Is Supported By Admissible Evidence ...................................................................................................... 27

   V.  3BTech Is Not Entitled To Attorney Fees And Expenses ................................... 28

# TABLE OF AUTHORITIES

## Cases

*Acciai Speciali Terni SPA v. United States*,
   120 F. Supp. 2d 11016 (Ct. Int'l Trade 2000) ............................................. 4

*Aero Rubber Co. v. United States*,
   359 F. Supp. 3d 13636 (Ct. Int'l Trade 2019) ......................................... 3, 4

*Baethke v. Ne. Illinois Reg'l Commuter R.R. Corp.*,
   No. 97 C, 7882, 1999 WL 11449174 (N.D. Ill. Dec. 9, 1999) ......................... 12

*Cobra Capital LLC v. LaSalle Bank Corp.*,
   455 F. Supp. 2d 8158 (N.D. Ill. 2006) ................................................... 25

*Eugene Baratto, Textures v. Brushstrokes Fine Arts*,
   701 F. Supp. 2d 1068 (W.D. Wis. 2010) ............................................... 7, 9

*In re Harrington*,
   55 C.C.P.A. 1459, 392 F.2d 6535 (1968) ................................................................ 4

*Hynix Semiconductor, Inc. v. United States*,
   27 CIT 14690 (2003) ................................................................................................ 3

*In re Cent. European Indus. Dev. Co.*,
   427 B.R. 1497 (Bankr. N.D. Cal. 2009) .............................................................. 7, 8

*Jimlar Corp. v. United States*,
   647 F. Supp. 9324 (Ct. Int'l Trade 1986) ............................................................... 4

*Lilley v. CVS Health*,
   Civ. No. 17-515, 2019 WL 1316401 (D.N.M. Mar. 29, 2019) ........................... 7, 8

*Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*,
   619 F.3d 7294 (7th Cir. 2010) ............................................................................... 12

*Palucki v. Sears, Roebuck & Co.*,
   879 F.2d 15682 (7th Cir. 1989) .............................................................................. 25

*Papierfabrick August Koehler SE v. United States*,
   997 F. Supp. 2d 13479 (Ct. Int'l Trade 2014) ..................................................... 3, 4

*Spirit Aerosystems, Inc. v. SPS Techs., LLC*,
   82 UCC Rep. Serv. 2d 136 (D. Kansas 2013) .................................................... 7, 11

*Streetsurfing LLC v. United States*,
   11 F. Supp. 3d 1287 (Ct. Int'l Trade 2014) ........................................ 14, 18, 19, 20

*Sumecht NA, Inc. v. United States*,
   331 F. Supp. 3d 14081 (Ct. Int'l Trade 2018) ......................................................... 4

*Ta Chen Stainless Steel Pipe Co. v. United States*,
   31 CIT 7940 (2007) .................................................................................................. 4

*United States v. Am. Cas. Co. Of Reading*,
   49 F. Supp. 3d 13467 (Ct. Int'l Trade 2015) ........................................................... 4

*United States v. Liu*,
   Court No. 22-00215, 2022 WL 43530311 (Ct. Int'l Trade Sept. 20, 2022) .......... 3, 4

*United States v. Peoples*,
    17 CIT 3267 (1993) ................................................................................................ 3

*Lilley v. CVS Health, et al.*,
    108 Fed. R. Evid. Serv. 1417, Civ. No. 17-515, 1019 WL 1316401 (Mar. 22, 2019) ........... 7, 8

## **Statutes**

15 U.S.C. § 2052(a)(2) ............................................................................................ 15, 16

15 U.S.C. § 2056b ................................................................................................... 15

## **Harmonized Tariff Schedule of the United States (HTSUS)**

Heading 9503

   Explanatory Note 95.03 ...................................................................................... 14, 20

   Subheading 9503.00.00 ...................................................................................... 14, 20

## **Rules**

Federal Rule of Civil Procedure 26(a)(2)(A) ............................................................. 5

Federal Rule of Civil Procedure 26(a)(2)(B) ............................................................. 5, 9

Federal Rule of Civil Procedure 26(a)(3) .................................................................. 5, 7

Federal Rule of Civil Procedure 26(e) ...................................................................... 5

Federal Rule of Civil Procedure 26(e)(1) .................................................................. 9, 10

Federal Rule of Civil Procedure 26(e)(2) .................................................................. 10

Federal Rules of Evidence (FRE) 602 ....................................................................... 25, 26

Federal Rules of Evidence (FRE) 701 ....................................................................... 25, 26

Federal Rules of Evidence (FRE) 705 ....................................................................... 26

USCIT Rule 1 .......................................................................................................... 3

USCIT Rule 3 ........................................................................................................... 5

USCIT Rule 5 ......................................................................................................... 23

USCIT Rule 12 ......................................................................................................... 3

USCIT Rule 12(f) ..................................................................................................... 3

USCIT Rule 26(a) .............................................................................................. 5, 27

USCIT Rule 26(a)(2)(A) ........................................................................................... 5

USCIT Rule 26(a)(2)(B) ........................................................................................... 5

USCIT Rule 26(a)(3) ............................................................................................. 5, 7

USCIT Rule 26(e) ..................................................................................................... 5

USCIT Rule 26(e)(1) ................................................................................................ 5

USCIT Rule 26(e)(2) ............................................................................................. 5, 7

USCIT Rule 33 ......................................................................................................... 5

USCIT Rule 34 ......................................................................................................... 5

USCIT Rule 36 ......................................................................................................... 5

USCIT Rule 37(c)(1)(A) ..................................................................................... 26, 27

USCIT Rule 56 ....................................................................................................... 23

USCIT Rule 56(c)(1)(A) ......................................................................................... 26

USCIT Rule 56(c)(2) ............................................................................................... 26

USCIT Rule 56(c)(4) ..................................................................................... 23, 24, 25

USCIT Rule 56.3 ..................................................................................................... 26

USCIT Rule 56.3(a) ................................................................................................ 26

USCIT Rule 56.3(c) ................................................................................................ 26

**<u>Regulations</u>**

16 C.F.R. § 1200.2. ....................................................................................................... 14

16 C.F.R. § 1250 ........................................................................................................... 16

**<u>Other Authorities</u>**

Top 5 Best Hoverboards for Daily Commute
    https://www.youtube.com/watch?v=HGzszQ7zl8o (Last accessed Oct. 18, 2024) ................. 21

Swagtron.com
    https://swagtron.com (Last accessed Oct 18, 2024) .................................................................. 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

_____
                                                                )
3BTECH, INC.,                                                   )
                                                                )
                          Plaintiff,                            )
                                                                )
                   v.                                           )          Court No. 21-00026
                                                                )
UNITED STATES,                                                  )
                                                                )
                          Defendant.                            )
_____)

<u>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE**</u>

Defendant, the United States (the Government), respectfully requests that the Court deny the motion filed by plaintiff, 3BTech, Inc. (ECF No. 38 (Pl. Mot.)), to strike the Declaration of Norbert (Bert) Reiner (ECF No. 37-2), the Declaration of Edward Benjamin (ECF No. 37-3), the Declaration of U.S. Customs and Border Protection (CBP) National Import Specialist (NIS) Matthew Sullivan (ECF No. 37-1), Defendant's Additional Rule 56.3 Statement (ECF No. 36-2), the Amendments to the Compendium of Classification Opinions (ECF No. 37-8), the World Customs Organization Classification Opinions (ECF No. 37-9), and to award to 3BTech attorney fees and expenses associated with drafting its motion.

3BTech's motion lacks merit.  3BTech claims that certain paragraphs in the Reiner and Benjamin declarations include information that was not contained in their expert reports and, therefore, 3BTech argues that the declarations are disguised and untimely additional or supplemental expert reports.  Pl. Mot. at 3.  The declarations of Messrs. Reiner and Benjamin are **_not_** additional or supplemental expert reports that introduce new reasoning, employ new methodologies, or offer new conclusions.  3BTech's claims that it was "blindsided" by

statements included in Messrs. Reiner's and Mr. Benjamin's declarations have no basis because the so-called new information referenced in these declarations is either in the expert reports, in documents that were attached to or referred to in the expert reports, in documents or data produced to 3BTech by the experts in response to a subpoena prior to their deposition, and/or was the subject of the experts' deposition testimony. 3BTech also has not demonstrated a legitimate basis for striking NIS Sullivan's declaration, which discusses his personal knowledge and observations of the contents and conditions of the packaging within which the samples 3BTech produced to the Government *after* the close of fact discovery were contained. The samples and documents to which NIS Sullivan refers were not only in 3BTech's possession, but they should have been submitted to the Court by 3BTech. Because the declarations of Messrs. Reiner, Benjamin and Sullivan, and the documents attached to NIS Sullivan's declaration are properly before the Court, the Government's use of these declarations and the exhibits attached to them to support of our additional CIT Rule 56.3 statement was proper.

Finally, although our brief refers to the Amendments to the Compendium of Classification Opinions (ECF No. 37-8) and the World Customs Organization Classification Opinions (ECF No. 37-9) (collectively referred to as WCO documents), these documents were not relied upon by CBP in denying 3BTech's protests, they are publicly available, and they are not documents that were subject to initial disclosure or responsive to any discovery request propounded by 3BTech. Rather, the WCO documents represent nonbinding persuasive legal authority that the Court may consider (or not) in its decision-making discretion in the same manner that the Court may consider nonbinding decisions from other courts.

Simply put, the Government did not violate any rules or orders of this Court or the Federal Rules of Civil Procedure, and the declarations and documents that 3BTech seeks to have stricken will not prejudice or mislead the Court. For these reasons, and as explained more fully below, the motion to strike should be denied and 3BTech is not entitled to attorney fees and expenses.

DISCUSSION

I.     Standard Of Review

Court of International Trade (USCIT) Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." USCIT R. 12(f).[1] The Court possesses broad discretion to grant or deny motions to strike. *United States v. Liu*, Court No. 22-00215, 2022 WL 4353031, at *1 (Ct. Int'l Trade Sept. 20, 2022) (citing *Aero Rubber Co. v. United States*, 359 F. Supp. 3d 1363, 1366 (Ct. Int'l Trade 2019); *Papierfabrick August Koehler SE v. United States*, 997 F. Supp. 2d 1347, 1349 (Ct. Int'l Trade 2014); *Hynix Semiconductor, Inc. v. United States*, 27 CIT 1469, 1470 (2003).

The Court has said that its "rules and procedures are designed to streamline litigation[.]" *Liu*, 2022 WL 4353031, at *1 (citing *United States v. Peoples*, 17 CIT 326, 327 (1993)). Pursuant to USCIT Rule 1, the Court construes, administers, and employs its rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." *Id*. (citing *Aero Rubber*, 359 F. Supp. 3d at 1366). And, the Court has found that granting USCIT Rule 12(f)

---

[1] We note that 3BTech refers to USCIT Rule 12 in its motion to strike, without specifying which subdivision of the rule supports its motion. Pl. Mot. at 1. USCIT Rule 12(f) governs motions to strike pleadings. The documents that 3BTech requests that the Court strike are not pleadings; rather, they are exhibits to the Government's cross-motion for summary judgment. Therefore, USCIT Rule 12(f) is inapplicable here.

motions to strike "constitutes an extraordinary remedy[.]"  *Id.*  Therefore, the Court has held that motions to strike should be granted only in cases where there has been a flagrant disregard of the Court's rules and should deny such motions unless a brief demonstrates a lack of good faith, or that the Court would be prejudiced or misled by the inclusion in the brief of the improper material.  *See In re Harrington*, 55 C.C.P.A. 1459, 392 F.2d 653, 655 (1968) ("[A] motion to strike the brief of any party to an appeal before this court is an extraordinary remedy and should be granted only in cases where there has been a flagrant disregard of our rules."); *Liu*, 2022 WL 4353031, at *1; *Aero Rubber*, 359 F. Supp. 3d at 1366; *Sumecht NA, Inc. v. United States*, 331 F. Supp. 3d 1408, 1411 (Ct. Int'l Trade 2018); *United States v. Am. Cas. Co. Of Reading*, 49 F. Supp. 3d 1346, 1347 (Ct. Int'l Trade 2015); *Papierfabrick*, 997 F. Supp. 2d at 1349; *Acciai Speciali Terni SPA v. United States*, 120 F. Supp. 2d 1101, 1106 (Ct. Int'l Trade 2000); *Jimlar Corp. v. United States*, 647 F. Supp. 932, 934 (Ct. Int'l Trade 1986).  Finally, because motions to strike represent a drastic remedy, they are not favored and are infrequently granted by the Court. *Ta Chen Stainless Steel Pipe Co. v. United States*, 31 CIT 794, 810 (2007).

II.    <u>The Reiner And Benjamin Declarations Are Not Additional Expert Reports</u>

3BTech seeks the exclusion of the declarations of Messrs. Reiner and Benjamin, which are attached as exhibits 2 and 3, respectively, to the Government's cross-motion for summary judgment, contending that the declarations "are in essence disguised additional expert reports that introduce new reasoning, employ new methodologies, and offer new conclusions, which were not disclosed in the Initial Expert Reports."  Pl. Mot. at 3, 5.  3BTech argues that the failure to timely disclose the declarations "is not substantially justified or harmless" and, therefore, the declarations must be stricken.  Pl. Mot. at 5.  3BTech's contentions and arguments lack merit.

A.    <u>The Expert Declarations Comport With The Orders And Rules Of The Court</u>

USCIT Rule 26(a)(2)(A) requires that parties disclose the identity of expert witnesses it

may use at trial to present evidence under Federal Rules of Evidence (FRE) 702, 703, or 705.

The expert disclosure must be accompanied by a written report prepared and signed by the

witness.  USCIT R. 26(a)(2)(B).

USCIT Rule 26(e)[2] addresses supplementation of initial disclosures (USCIT Rule 26(a))

and responses to discovery requests (USCIT Rules 33, 34, and 36) and supplementation of expert

disclosures (USCIT Rule 26(a)(2)(B)) and expert deposition testimony.  Under USCIT Rule

26(e)(1), supplementation or correction of initial disclosures and responses to discovery requests

must be made: "(A) in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or corrective information

has not otherwise been made known to the other parties during the discovery process or in

writing; or (B) as ordered by the court."  USCIT R. 26(e)(1).  On the other hand, "[f]or an expert

whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends

both to information included in the report and to information given during the expert's

deposition" and "[*a]ny additions or changes to this information must be disclosed by the time

the party's pretrial disclosures under Rule 26(a)(3) are due*."  *See* USCIT R. 26(e)(2) (emphasis

added).

The initial scheduling order was entered by the Court in this action on March 10, 2022.

*See* ECF No. 14.  Thereafter, the scheduling order was amended four times.  *See* ECF Nos. 18,

23, 28, and 30.  The Court's second amended scheduling order of May 12, 2023 (ECF No. 23)

---

[2]  CIT Rule 26(e) is identical to Federal Rule of Civil Procedure 26(e).

required that expert reports be served on November 6, 2023. On November 6, 2023, the Government timely identified Messrs. Reiner and Benjamin as experts, and the reports prepared and signed by these experts were served on 3BTech on that date. *See* Pl. Mot. at 2. Pursuant to the third amended scheduling order entered on January 4, 2024 (ECF No. 28), rebuttal expert reports were due to be filed on March 4, 2024. 3BTech produced rebuttal expert reports to the Reiner and Benjamin expert reports on March 4, 2024. *See* Pl. Mot. at 3. On March 19, 2024, 3BTech served subpoenas upon Messrs. Reiner and Benjamin, and each subpoena included a command for the expert to produce documents prior to the date of the deposition. *See* Ex. 1, Reiner Subpoena; Ex. 2, Benjamin Subpoena. Messrs. Reiner and Benjamin identified and/or produced the documents as they were commanded within the required time. *See* Ex. 3, Reiner Prod. Doc; Ex. 4, Benjamin Prod. Doc. 3BTech deposed Messrs. Reiner and Benjamin on April 5, 2024, and April 11, 2024, respectively, and examined them regarding information contained in their expert reports and certain of the documents they had identified and/or produced, among other things. *See* ECF No. 31-15, Pl. Ex. L (Reiner Dep. Tr.)); ECF No. 31-18 (Pl. Ex. M, Benjamin Dep. Tr.). Expert depositions, pursuant to the third amended scheduling order, ECF No. 28, were completed by April 15, 2024.

After the completion of expert depositions, the Court granted the parties' joint motion to amend the scheduling order and required that 3BTech file a motion for summary judgment by July 12, 2024, and ordered that the Rules of this Court shall govern any responses, which included a cross-motion for summary judgment. ECF No. 30. There is no provision in that order addressing supplemental expert disclosures, requests for trial, or an order governing trial. *Id*. No

deadline was established in the last scheduling order for serving supplemental or amended expert reports and the time for doing so is, therefore, governed by the Rules of this Court.

Pursuant to USCIT Rule 26(e)(2), any additions or changes to information included in an expert report and to information given during the expert's deposition "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." USCIT Rule 26(a)(3) requires, among other things, that "a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment" and that such disclosure be made at least 30 days before trial, unless otherwise ordered by the Court. Because the Court did not otherwise set a time for the submission of supplemental or amended expert reports, pursuant to USCIT Rules 26(a)(3) and 26(e)(2), the time for submitting supplemental or amended expert reports is 30 days before trial. Consequently, even if viewed as supplemental or amended expert reports, which they should not be, the declarations of Messrs. Reiner and Benjamin were timely because the rules of this Court permit the supplementation or amendment of such report as late as 30 days before trial.

To support its argument that the declarations of Messrs. Reiner and Benjamin are untimely, 3BTech relies heavily upon the decisions in *Lilley v. CVS Health*, Civ. No. 17-515, 2019 WL 1316401 (D.N.M. Mar. 29, 2019) (*Lilley*), *In re Cent. European Indus. Dev. Co.*, 427 B.R. 149, 157 (Bankr. N.D. Cal. 2009) (*In re Cent.*), *Eugene Baratto, Textures v. Brushstrokes Fine Arts*, 701 F. Supp. 2d 1068 (W.D. Wis. 2010) (*Baratto*), and *Spirit Aerosystems, Inc. v. SPS Techs., LLC*, 82 UCC Rep. Serv. 2d 136 (D. Kansas 2013) (*Spirit Aerosystems*). *See* Pl. Mot. 4-8. However, the decisions in those cases do not support striking the declarations of Messrs. Reiner and Benjamin.

7

One of the issues in *Lilley* involved a motion to strike plaintiff's expert's affidavit, an affidavit that was submitted after the deadline for expert disclosures and after the defendant had taken that expert's deposition and that was described as retroactively creating a foundation for the expert's opinion as expressed in the initial expert report. 108 Fed. R. Evid. Serv. 1417, Civ. No. 17-515, 1019 WL 1316401 (Mar. 22, 2019), *3. The U.S. District Court for the District of New Mexico held that the expert affidavit submitted after the deadline for submitting expert reports went "beyond correcting a mistake or oversight, or merely supplementing" the expert's initial report. The court found that that expert's affidavit set forth "a methodology and reasoning in an effort to strengthen [the initial expert report] and cure any deficiencies in that report." *Id*. at *4. The district court found that the expert could have included in her initial report certain factors that she had examined, how she viewed certain data, her assessment of certain factors, and the literature upon which she had relied. *Id*. Had the expert included the factors that she had examined, how she viewed certain data, her assessment of certain factors, and the literature upon which she had relied in her initial report, she could have been deposed regarding that it, her methodology, and its application to that case. *Id*. The information was not included and, therefore, the expert was not deposed regarding that information. Indeed, the expert's testimony at the deposition was different from the information supplied in her affidavit. *Id*. at *1-3. Therefore, the district court did not consider the affidavit, holding that, in effect, it was an untimely second expert report. *Id*. at *8.

*In re Cent*. involved an expert who had been noticed to opine about one issue. 427 B.R. 149. In addition to providing a robust discussion about that one issue, the expert included one conclusory and isolated sentence about a second issue in her report. 427 B.R. 149. Thereafter,

in a declaration submitted after the close of discovery, the expert substantively opined on the second issue.  The U.S Bankruptcy Court for the Northern District of California found that, as expressed in the initial expert report, the opinion on the second issue did not comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B), which requires that expert reports contain "a complete statement of all opinions the witness will express and the basis and reasons therefor."  *Id*. at 156-157.  Although the declaration provided more information on the second issue, the bankruptcy court concluded that the declaration, even when read together with the initial report, was still deficient as an expert report, and it was untimely.  *Id*. at 157.  The court explained that it considered the declaration in two ways.  First, it viewed the declaration as a "new" report and explained that "regardless of its deficiencies, filing an undisclosed expert report long after the deadline is an improper attempt to circumvent the expert discovery schedule established by this court."  *Id*.  The court then viewed the declaration as a "supplement," and determined that, because the initial report included only one conclusory reference to the second issue, the declaration was not a proper "supplement" to the initial expert report.  *Id*.  Rather, the court determined that the affidavit "set[] forth information, reasoning and opinions in order to cure that part of [the initial report's] deficiencies, Rule 26 required such things to be disclosed in [the critical initial report]."  The court explained that the "purpose of . . . supplementary disclosures is just that—. . . to supplement.  These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."  *Id*. (citations omitted; cleaned up).

     *Baratto*, a patent case, involved a motion to strike an expert affidavit that included new opinions submitted outside of the time permitted by the preliminary pretrial court order.  The

preliminary pretrial order had imposed the "stricter" supplementation requirements of Federal

Rule of Civil Procedure 26(e)(1) on the supplementation of initial expert reports. *Baratto*, 701 S.

Supp. 2d 1068. The U.S. District Court for the Western District of Wisconsin's pretrial order

stated:

> There shall be no third round of rebuttal expert reports.
> Supplementation pursuant to Rule 26(e)(1) is limited to matters
> raised in an expert's first report, must be in writing and must be
> served not later than five calendar days before the expert's
> deposition, or before the general discovery cutoff if no one deposes
> the expert. . . . Failure to comply with these deadlines and
> procedures could result in the court striking the testimony of a
> party's expert pursuant to Rule 37.

*Id*. at 1070-1071 (citation omitted). The district court explained that the deadlines in the above-

quoted paragraph "flagged and highlighted [that] court's well-known antipathy to a party's post-

deposition revelation of new expert information that did not qualify as actual supplementation"

and the deadlines stated in it "applied across the board so that a party could not invoke Rule

26(e)(2)'s looser deadlines as an excuse for the late disclosure of new information." *Id*. at 1071.

The district court noted that it imposed these requirements in every patent case. *Id*. The district

court recognized that supplemental expert reports are allowable, stating: "A timely supplemental

expert report is allowable, but it must be an actual supplement, not a new and different set of

opinions. In patent lawsuits filed in this court, moving targets are highly disfavored, late-

presented moving targets are anathemas." *Id*. (citation omitted; cleaned up). In the end, the

district court granted the motion to strike in part, stating that it would disregard portions of the

affidavit and strike those portions that introduced new opinions. *Id*. Notably, the court denied

the motion to strike in part, finding that certain of the challenged parts of the expert affidavit

were (1) clarifications that did not enlarge the scope of the expert's initial report or introduce

10

new opinion, (2) more clearly articulated findings noted in the initial report, or (3) minor additions to the initial report.  *Id*. at 1071-1073.

Finally, the parties in *Spirit Aerosystems* filed motions for partial summary judgment on various claims and defenses, and the defendants also filed a motion to strike two paragraphs of a supplemental expert report served by the plaintiff.  The U.S. District Court for the District of Kansas granted the defendants' motion to strike the two paragraphs because the plaintiff's supplemental expert report contained a new opinion that had not been expressed in the initial expert report.  *Spirit Aerosystems*, 82 UCC Rep. Serv. 2d 136, 2013 WL 6196314, *1.  The district court had ordered that: (1) plaintiff's expert reports were due by July 20, 2012; (2) defendants' expert reports were due by August 24, 2012; (3) supplemental disclosures were due by September 17, 2012; and (4) the discovery deadline was October 5, 2012.  *Id*.  Although the plaintiff's expert's initial report had been timely served, the supplemental report was served before the end of discovery but seven days after the date set in the order for supplemental disclosures.  *Id*. *5-6.  The district court found that additions or changes to initial expert reports were covered by the date for serving supplemental disclosures in the court's order.  *Id*. at *6.  The district court further found that the expert's "new opinion based on the additional testing did not correct incorrect information or complete incomplete information in the [initial expert] report because the new information could have been included in the original report if [the plaintiff] had chosen to do the testing earlier."  *Id*. at *7.  Therefore, the district court found that "the new opinion related to additional testing in [the expert's supplemental report] exceeded the scope of a proper supplemental report."  *Id*.  Finally, the court found that the untimely supplemental disclosure was prejudicial and the result of a willful decision by the plaintiff who had instructed

11

the expert to not conduct the additional testing prior to preparing the initial report, and not the result of an unintentional oversight. *Id*. Therefore, the court struck a portion of the supplemental report; however, it did not strike the entire supplemental expert report.

Each of these cases confirm that supplementation of an expert report is permissible when it comports with the Federal Rules of Civil Procedure or the court's orders. None of these cases show that a party is barred from submitting an expert declaration in support of a motion for summary judgment that contains expert opinions previously disclosed in timely expert reports.

   B.   The Reiner And Benjamin Declarations Incorporate The Opinions Stated In Their
        Expert Reports And Relevant Testimony From Their Depositions

The purpose of the report is to provide adequate notice of the substance of the experts forthcoming testimony and to give the opposing party time to prepare for a response. *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) (citations omitted). *See also Baethke v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 97 C 7882, 1999 WL 1144917, at *4 (N.D. Ill. Dec. 9, 1999) ("The purpose of expert reports is to inform the adverse party of all opinions to be expressed at trial and their underlying support so it can thoroughly assess the nature and the scope of the expert opinion in preparation for trial; this process eliminates unfair surprise and preserves resources of the parties and the court.").

In this case, Messrs. Reiner and Benjamin provided timely, detailed, and complete written expert reports nearly a year ago. 3BTech has had all the information (in a combination of Messrs. Reiner's and Benjamin's written expert reports, deposition testimony, and the documents and data that they reviewed and relied upon) available to them for months, and at least before the depositions. Messrs. Reiner's and Benjamin's opinions and the bases for the opinions have not changed. Although certain information in Messrs. Reiner's and Benjamin's declarations was

clarified, those clarifications did not enlarge the scope of their expert reports or introduce new opinions. Certain information in Messrs. Reiner's and Benjamin's declarations is more clearly articulated than in their expert reports; however, that information is substantively the information as contained in their expert reports. Finally, any minor additions included in Messrs. Reiner's and Benjamin's declarations did not change the substance of their opinions as expressed in their expert reports. Therefore, as explained below, 3BTech's claim of surprise should be rejected because the information about which 3BTech complains was disclosed to it prior to or during the expert depositions.

       1.   <u>Reiner Declaration</u>

In his expert report, Mr. Reiner states that "[b]ased upon [his] education, training, and professional experience, it is [his] opinion that the hoverboards that are the subject of this case are not 'wheeled toys' and are not within the same class, or kind as with 'tricycles, scooters, pedal cars and similar wheeled toys.'" Pl. Mot., Ex. A at 2. In addition to providing a copy of his *curriculum vitae* that provides his education, training, and professional experience, Mr. Reiner stated that he has been in the toy industry since 1967, is an active member of the ASTM committee for safety, worked for two of the most successful toys companies in the United States, and was responsible for developing, engineering, quality assurance and manufacturing of toys, infant products, and sporting goods. *Id*. To inform his opinion, Mr. Reiner reviewed and considered documents, how hoverboards, are defined, how hoverboards are sold by hoverboard manufacturers, how they are marketed advertised and sold in retail stores, applicable regulations and public ordinances, and manufacturer's safety guidelines, cautions and warnings, and other safety standards. Mr. Reiner also identified 26 categories of documents and data that he

considered in forming his opinion.  *Id*.  Mr. Reiner also stated which retail establishments he

visited, and what he observed in those establishments.  *Id*.  Finally, Mr. Reiner also disclosed

that he had submitted an expert report in connection with *Streetsurfing LLC v. United States*, 11

F. Supp. 3d 1287 (Ct. Int'l Trade 2014).  *Id*.

The opinion in Mr. Reiner's declaration ***does not depart*** from the opinion expressed in

his expert report.  Indeed, the opinion remains the same – "It is [his] opinion that hoverboards

are not 'wheeled toys' and are not like the 'wheeled toys' that [he] has designed and

manufactured, which are identified in HTSUS subheading 9503.00.00 and the Explanatory Note

95.03.  *See* ECF No. 37-2, Def. Ex. 2, Reiner Decl. at 11.  Although Mr. Reiner's declaration

certainly incorporates information from the documents and data that Mr. Reiner identified in his

expert report, documents and data that he identified or produced to 3BTech prior to his

deposition, and his deposition testimony, the underlying bases for Mr. Reiner's opinion did not

change.

Nevertheless, according to 3BTech, Mr. Reiner's declaration includes approximately 18

"new methodologies, reasoning, and conclusions, not disclosed in [Mr. Reiner's expert report.]"

Pl. Mot. at 10-11.  3BTech claims that Mr. Reiner included new information in his declaration

that is not included in his expert report, such as:

> (1) a description of ride-on toys as being made "with/or without"
> pedals in ¶ 14;
>
> (2) the inclusion of four types of "ride-on" toys, such as push toys,
> ride-on toys, pedal cars, and tricycles in ¶ 15;
>
> (3) a conclusion that "wheeled toys are and have been designed,
> manufactured, and marketed for use by young children, usually
> between the ages of 12 months to eight years old" in ¶ 19;

(4) a conclusion that wheeled toys, such as tricycles, scooters, pedal cars are designed to help children with physical and cognitive development and help children develop gross motor skills, coordination, and balance in ¶ 19;

(5) the introduction of (a) labeling requirements for children's products under 15 U.S.C. § 2052(a)(2), (b) an "analysis of factors used to determine whether a product is a children's product under 16 C.F.R. § 1200.2" and (c) an analysis of mandatory toy safety standards' incorporation under 15 U.S.C. § 2056b in ¶ 21; and

(6) a discussion of "acquired skills" and how those skills ("steering and stopping…by shifting of the user's body weight") are "out of line with the skills of the children who use tricycles, scooters, pedal cars, and other wheeled toys" in ¶ 37.

Pl. Mot. at 10-11.  Contrary to 3BTech's claims, (1) the manner in which Mr. Reiner collected and analyzed data, the type of research he chose, and his rationale behind the methodology did not change; (2) the reasoning behind his opinion did not change; and (3) his conclusion did not change.  Indeed, the information to which 3BTech refers cannot fairly be characterized as "new" methodologies, reasoning, or conclusions.  Even if the 18 matters to which 3BTech refers is considered "new" information, which it is not, it is information that was provided to 3BTech before it took Mr. Reiner's deposition; therefore, 3BTech to claim surprise.

For example, 3BTech complains that Mr. Reiner included in paragraph 14 of his declaration a description that ride-on toys are made "with/or without pedals."  Pl. Mot. at 10.  In his expert report, Mr. Reiner states that ride-on toys generally have pedals and "can be used by applying pressure of the foot against the pedals, or the ground, or drawn or pushed by another person, or be driven by a simple motor."  Pl. Mot., Ex. A.  Mr. Reiner also identified scooters as being "wheeled toys," and children ride on them without the use of pedals.  *Id*.  Mr. Reiner also states in his expert report that he considered the CPSC Age Determination Guidelines, dated January 2020 (CPSC Guidelines) in forming his opinions.  *Id*.  The CPSC Guidelines, the

relevant portion of which was produced to 3BTech prior to Mr. Reiner's deposition, expressly refer to "the method of propulsion" of ride-on toys as including wheeled toys that rely on ***children pushing with their feet*** (*i.e.*, without pedals) and those that are propelled by pedaling and motors. *See* Def. Ex. 5 (Reiner Dep. Ex. 8). Also, in response to the deposition subpoena, Mr. Reiner identified patents of toys that he designed and produced while working in the toy industry, including a patent for a ride-on wheeled toy without pedals. *See* Def. Ex. 3. Therefore, while the expert report does not explicitly state that some ride-on toys are made "without pedals," it contains sufficient information, together with the documents produced prior to the deposition, to provide 3BTech notice that Mr. Reiner's opinion included ride-on toys without pedals.

As noted above, Mr. Reiner's expert report states that in forming his opinion he considered the CPSC Guidelines. *See* Pl. Mot., Ex. A. During his deposition, Mr. Reiner was questioned by 3BTech about the portions of the CPSC Guidelines that Mr. Reiner had produced and considered in forming his opinion. ECF No. 31-15, Pl. Ex. L, Reiner Depo Tr. 111:16-124:3. The CPSC Guidelines that were identified in Mr. Reiner's expert report, produced to 3BTech prior to the deposition, and discussed by Mr. Reiner during his deposition expressly refer to the Consumer Product Safety Improvement Act and 15 U.S.C. § 2052(a)(2) and the incorporation by reference of ASTM F963 Standard Consumer Safety Specification for Toy Safety into 16 C.F.R. part 1250. Therefore, while Mr. Reiner's expert report does not directly refer to the Consumer Product Safety Improvement Act and 15 U.S.C. § 2052(a)(2) and the incorporation by reference of ASTM F963 Standard Consumer Safety Specification for Toy Safety into 16 C.F.R. part 1250, 3BTech had notice before the deposition that Mr. Reiner had

considered the CPSC Guidelines and that the guidelines refer to the statute, ASTM standards, and the regulations. *See* Ex. 5, Reiner Dep. Ex. 8. 3BTech could have inquired of Mr. Reiner during the deposition about this information, but it did not.

The CPSC Guidelines also describe the relationship between certain ride-on toy characteristics and the characteristics of children in various age groups, and they include a description of what types of ride-on toys are appropriate for a particular age group and how children in each age group play with the age-appropriate toys. *Id*. The guidelines refer to a variety of ride-on toys as being "important for developing a sense of balance, physical fitness, and coordination." *Id*. The CPSC Guidelines also discuss "cognitive skills" in that they discuss what children are learning and the ages at which children have skills to control what they do (in contrast to motor skills) and to understand risks and consequences. *Id*. The guidelines also discuss the "motor skills" of children in various age groups from 12 to 18 months, 19 to 23 months, 2 years old, 3 years old, 4 to 5 years old, 6 to 8 years old, and 9 to 12 years old. *Id*. Finally, the guidelines discuss the types of ride-on wheeled toys children can use based on both their cognitive and motor skills by age group. *Id*. Therefore, the inclusion of this information in Mr. Reiner's discussion of "acquired skills" and how those skills (*i.e.*, "steering and stopping…by shifting of the user's body weight") are "out of line with the skills of the children who use tricycles, scooters, pedal cars, and other wheeled toys" is not "new" information. Rather, it is information that was disclosed to 3BTech prior to the deposition. Indeed, during the Mr. Reiner's deposition, 3BTech examined Mr. Reiner on these guidelines. ECF No. 31-15, Pl. Ex. L, Reiner Depo Tr. 111:16-124:3. Although 3BTech did not question Mr. Reiner about the

"cognitive skills" referred to in the guidelines, it cannot blame the Government for its decision to forgo this line of inquiry.

In his declaration, Mr. Reiner refers to being aware of three broad categories of scooters: (1) scooters that do not have a motor; (2) motorized scooters that are two wheeled vehicles with a rechargeable battery; and (3) e-scooters. ECF No. 37-2, Def. Ex. 2, Reiner Decl., ¶ 16. Mr. Reiner, however, offers no opinion regarding motorized scooters or e-scooters. Instead, Mr. Reiner limited his opinion, as expressed in the declaration, to scooters for children, *id.*, which is declaration testimony that 3BTech does not challenge. Therefore, it is unclear why paragraph 16 of Mr. Reiner's declaration represents any kind of prejudice to 3BTech.

3BTech complains that paragraph 17 of Mr. Reiner's declaration introduces an analysis of additional "common characteristics" amongst wheeled toys beyond those initially identified by him in relation to the *Streetsurfing* case. Pl. Mot. at 10 (complaining that Mr. Reiner's expert report does not state that wheeled toys do not involve exercise and have one or more assistive devices, such as a seat, additional wheels, hand levers, handlebars or steering column, pedals, or brakes.). Similarly, 3BTech notes that Mr. Reiner states in paragraph 37 of his declaration that "a gyroscope motor is not an assistive device of the kind found on wheeled toys." *Id*. at 11. These complaints are without basis because both Mr. Reiner's expert report and declaration refer to assistive devices, such as seats, additional wheels, handlebars, hand-levers, steering wheels, pedals, or brakes. *See* Pl. Mot., Ex. A; ECF No. 37-2, Def. Ex. 2, Reiner Decl. ¶ 17. And, although "exercise" was an issue in *Streetsurfing* and is referred to in the Reiner declaration, neither party in this case contends that wheeled toys of Heading 9503 or the hoverboards at issue involve exercise. In any event, 3BTech cannot legitimately complain that it was prejudiced

18

because it was provided notice that Mr. Reiner submitted an expert report and was deposed in connection with the *Streetsurfing* case. *See* Pl. Mot., Ex. A. 3BTech had notice and an opportunity to depose Mr. Reiner about all the *Streetsurfing* factors but did not.

3BTech complains that Mr. Reiner provided an additional conclusion in paragraph 17 that "none of these wheeled toys require following traffic rules." Pl. Mot. at 10. This is true. However, this comment, standing alone, does not prejudice 3BTech.

3BTech complains that in paragraphs 24 and 37 of his declaration, Mr. Reiner offers inconsistent definitions of whether hoverboards are equipped with just "motors" or "two motors." Pl. Mot. at 11. This cannot be viewed as a serious complaint. The word "motors" is plural, and Mr. Reiner specifies in his declaration that the imported hoverboards are "equipped with a gyroscope and two motors." *See* ECF No. 37-2, Def. Ex. 2, Reiner Decl. at 8. This is not a disputed fact because 3BTech admits that the imported hoverboards are equipped with a gyroscope and motors. *See* ECF No. 31-1, Pl. R. 56.3 Stmt. at ¶ 15 ("All Hoverboards have two wheels driven by 200-300 watt electric ***motors*** powered by rechargeable batteries." (Emphasis added)). The imported hoverboards ***are*** equipped with two motors and a gyroscope; therefore, these hoverboards have "motors" and Mr. Reiner's description of them is not inconsistent, and it has not changed.

Mr. Reiner stated in his expert report that he visited numerous retail stores and observed where hoverboards were set up for retail sale. *See* Pl. Mot., Ex. A. He also took pictures of the hoverboards he observed in the retail stores, and those photographs were provided to 3BTech prior to Mr. Reiner's deposition. *See* Ex. 3, Reiner Prod. Doc. (referring to ten photographs from retail stores); see also Ex. 5. It is incongruous that 3BTech would complain now that Mr. Reiner

made observations of the retail packaging of hoverboards, which he took pictures of and produced to 3BTech. 3BTech attached one of Mr. Reiner's retail photos as an exhibit to its motion for summary judgment. *Id*. Therefore, 3BTech's complaint regarding Mr. Reiner's review of boxes and labeling of the hoverboards that he saw in retail stores and took photographs of lacks merit.

3BTech complains that Mr. Reiner states in paragraphs 35-37 of his declaration that he is familiar with HTSUS subheading 9503.00.00 and Explanatory Note 95.03. Pl. Mot. at 11. However, in addition to notifying 3BTech that he had been an expert in the *Streetsurfing* case, wherein the classification dispute involved HTSUS subheading 9503.00.00 and Explanatory Note 95.03, Mr. Reiner identified HTSUS subheading 9503.00.00 and Explanatory Note 95.03 as documents that he reviewed when he responded to the subpoena commanding the production of documents **prior** to his deposition. *See* Ex. 3, Reiner Prod. Doc. Therefore, 3BTech's complaint here lacks merit.

As is clear, because 3BTech had the documents and data relating to its complaints regarding Mr. Reiner's declaration prior to Mr. Reiner's deposition, its arguments that it was "deprived of an opportunity to validate the authenticity, credibility, or veracity of the new opinions and additional findings" in Mr. Reiner's declaration, Pl. Mot. at 11-12, 18, should fall on deaf ears. We note that 3BTech did not ask Mr. Reiner a single question about his opinion at the deposition. *See* Reiner Dep. Tr. at 170:25—171:7 (Mr. Reiner stating: "Well, throughout our discussion and your queries, pertain to toys. One of the things that I feel is that this product [hoverboards] is not part of a wheeled toy, and we didn't discuss that at all. Is it appropriate to cover that?"; Mr. Kiyasov responding: ***This deposition is concluded, at least from my side. I***

*asked the questions that I wanted to ask*.” (Emphasis added)).  Therefore, 3BTech's requests

that the Court strike Mr. Reiner's declaration because it should be denied.

        2.    <u>Benjamin Declaration</u>

3BTech claims that paragraphs 3, 9, 11-15, 19, 21-25, and 27- 28 of Mr. Benjamin's

declaration include additional conclusions and, therefore, 3BTech requests that the Court strike

Mr. Benjamin's declaration because it was "deprived of an opportunity to validate the

authenticity, credibility, or veracity of the new opinions and additional findings" in Mr.

Benjamin's declaration.  Pl. Mot. at 11-12, 18.  3BTech's request to strike Mr. Benjamin's

declaration should be denied because the information in the declaration is consistent with Mr.

Benjamin's expert report, was previously disclosed to 3BTech, was the subject of Mr.

Benjamin's deposition testimony, and/or was identified in the documents and data produced by

Mr. Benjamin prior to his deposition.

Paragraphs 3, 9, 11-15 of Mr. Benjamin's declaration discuss Mr. Benjamin's

background in the Light Electric Vehicle (LEV) industry, the types of vehicles that the LEV

industry covers, the overlap of the bicycle and LEV industry, and that the LEV is a category of

the micro-mobility industry.  All this information was the subject of Mr. Benjamin's deposition

testimony.  *See* ECF No. 31-18, Pl. Ex. M, Benjamin Dep. Tr.  Therefore, 3BTech was not

deprived of an opportunity to validate the authenticity, credibility of veracity of this information;

indeed, 3BTech examined Mr. Benjamin and elicited this testimony during the deposition.  *Id*.

Paragraph 19 of Mr. Benjamin's declaration states his opinion that the hoverboards at

issue in this case are personal transportation devices within the LEV industry.  This opinion is

consistent with the opinion expressed in Mr. Benjamin's expert report, wherein Mr. Benjamin

states "hoverboards are electric micro mobility vehicles." *See* Pl. Ex. B.  Upon examination by

3BTech during his deposition, Mr. Benjamin explained that the LEV industry and the

micromobility business are the same, and LEVs, like hoverboards, are "intended to carry a

person from A to B."  ECF No. 31-18, Pl. Ex. M., Benjamin Dep. Tr. 56:24-59:5.  Therefore,

although the declaration clarifies the terminology, Mr. Benjamin's opinion has not changed.

Paragraphs 21-26 of Mr. Benjamin's declaration identify documents that Mr. Benjamin

reviewed to "confirm his understanding of hoverboard components, operating paradigm, and

use[.]"  The majority of documents that Mr. Benjamin identifies in paragraph 21 of his

declaration are documents that he identified in connection with the production of documents

request served on him as a part of the deposition subpoena.  *See* Ex. 4, Benjamin Doc. Prod.  The

Benjamin document production identified and or produced the following documents: (1) the

Swagtron® User Manual for Hoverboard model T1 and T6 (Document F); (2) Swagtron®

Design diagrams (Document F); (3) KY07 (Batteries) Description Report issued September 19,

2016, revised January 16, 2018(Document F); (4), SGS Certificate of Compliance

#SGSNA/22/SZ/00097, issue date 2018-January-16 (Document F); (5) Swagtron trademark

registration (Document F); (6) numerous online articles (Document F); and (7) YouTube Video

(identifying Top 5 Best Hoverboards for Daily Commute, including Swagtron T6 Outlaw

hoverboard) publicly available at https://www.youtube.com/watch?v=HGzszQ7zl8o) (Document

F).  *Id*.  These documents were produced by 3BTech to the Government during discovery: (1) the

Swagtron® User Manual for Hoverboard model T1 and T6 (Document F); (2) Swagtron®

Design diagrams (Document F); (3) KY07 (Batteries) Description Report issued September 19,

2016, revised January 16, 2018(Document F); (4), SGS Certificate of Compliance

#SGSNA/22/SZ/00097, issue date 2018-January-16 (Document F); (5) Swagtron trademark registration (Document F). Therefore, 3BTech should not have been surprised by Mr. Benjamin's reference to them.

Although the Chen patent was not identified or produced by Mr. Benjamin, it was identified and produced by Mr. Reiner prior to Mr. Reiner's deposition. *See* Ex. 3, Reiner Doc. Prod. Therefore, 3BTech had the Chen patent before it deposed Mr. Benjamin. Furthermore, the Chen patent was the subject of discussion during Mr. Benjamin's deposition. ECF No. 31-18, Pl. Ex. M., Benjamin Dep. Tr. 77:14-78:25. Mr. Benjamin also discusses the Segway patent in paragraph 22 of his declaration, and, like the Chen patent, the Segway patent was discussed during Mr. Benjamin's deposition as representing "preexisting art" for the hoverboard. *Id*. at 77:14-78:25. Importantly, in his expert report, Mr. Benjamin identifies and specifically refers to the Segway patent as being a document that he had reviewed. *See* Pl. Ex. B. Therefore, 3BTech cannot legitimately claim that it was deprived the opportunity to examine Mr. Benjamin about documents and data that: (1) was produced to the Government by 3BTech in discovery; (2) was identified by Mr. Benjamin in his expert report; (3) was either identified or produced by Mr. Benjamin or Mr. Reiner prior to Mr. Benjamin's deposition; or (4) was the subject of Mr. Benjamin's deposition testimony.

As for Mr. Benjamin's discussion of motorcycles in paragraphs 16 and 29 of his declaration, this testimony is permissible and should not have come as a surprise to 3BTech. Mr. Benjamin attached a copy of his *curriculum vitae* to his expert report. *See* Pl. Ex. B. The *curriculum vitae* identifies several of his clients, including General Motors, Harley Davidson, Toyota R & D, and Honda R & D. *Id*. Additionally, during his deposition, Mr. Benjamin

identified "light electric motorcycles" as being a part of the micromobility industry. *See* ECF No. 31-18, Pl. Ex. M, Benjamin Dep. Tr. 18:20-24. Therefore, notwithstanding that Mr. Benjamin's expert report does not refer to motorcycles, 3BTech had notice that Mr. Benjamin had clients in the motorcycle industry before it took Mr. Benjamin's deposition and before it filed its motion for summary judgment.

Finally, we concede that Mr. Benjamin did not previously identify or produce the Department of Energy study referred to in paragraph 25 of his declaration. However, the Court should consider this testimony because it would be admissible at trial, notwithstanding that it was not disclosed to 3BTech.

III.    The Sullivan Declaration Is Percipient Witness Testimony And Should Not Be Stricken

3BTech requests that the Court strike NIS Sullivan's declaration and the attachments to it as untimely because they were "produced after discovery had concluded and Plaintiff had already filed its Motion for Summary Judgement." Pl. Mot. at 18. 3BTech argues that it was not afforded "an opportunity to depose NIS Sullivan and corroborate his findings or examine the methodology and process of examination conducted via video recording." Pl. Mot. at 20. Therefore, according to 3Btech, the Court must strike NIS Sullivan's entire declaration and the attachments to it as "untimely" disclosures that "lack of video recording of the examination." *Id*. The declaration of NIS Sullivan is timely and admissible, and 3BTech has presented no legitimate reason to the Court to strike it.

As provided in USCIT Rule 56, declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." USCIT R. 56(c)(4). Federal Rule of Evidence (FRE)

24

602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony."  FRE 701 provides that a witness' testimony may include opinions or inferences one draws from his own observations.  *See* Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *Cobra Capital LLC v. LaSalle Bank Corp.*, 455 F. Supp. 2d 815, 818 (N.D. Ill. 2006).  The prototypical examples of the type of evidence contemplated by the adoption of FRE 701 relate to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.  *See* Fed. R. Evid. 701, 2000 Amendments, Advisory Committee Notes (citation and internal quotations omitted).  Therefore, when read in conjunction, USCIT Rule 56(c)(4) and FRE 602 and 701 provide that a witness may provide testimony relating to those facts which they personally perceived through first-hand knowledge or observation and the logical inferences and opinions drawn from what they have observed.

There is no bar to a witness observing an event virtually.  There is no requirement that a witness's observation be recorded.  Indeed, FRE 602 expressly provides that evidence to prove personal knowledge "may consist of the witness's own testimony."  Fed. R. Evid. 602.

Furthermore, there is no requirement within the rules of this Court or the Federal Rules of Evidence that a declarant's visual examination of samples produced in response to discovery requests be subject to further discovery by the producing party.

NIS Sullivan sets forth in his declaration the who, what, where, when, and how related to his first-hand knowledge and observations of documents and samples. Specifically, in his declaration, NIS Sullivan stated his first-hand knowledge and observation of who was present in-person and virtually for the opening and examination of the contents of eight boxes of samples produced by 3BTech to the Government. ECF. No. 37-1, Def. Ex. 1 at ¶¶ 13-22. NIS Sullivan stated when and where the examination took place. *Id*. at ¶ 13. He described what he observed regarding the way the boxes of the physical samples of the imported hoverboards were initially displayed. *Id*. at ¶ 14. NIS Sullivan described how he could see and what he was able to see of the boxes of samples, including whether the colors of and kinds of boxes (*e.g.*, whether the box was a retail, factory, or corrugated box). *Id*. at ¶¶ 15-22. He described what he observed was contained in each box, including the packing material, the hoverboard model, the charger, quick start guide, and user manual. *Id*. The testimony that NIS Sullivan provides in his declaration regarding his virtual examination of the eight boxes of samples produced by 3BTech in response to the Government's discovery requests is precisely the kind of testimony permitted by USCIT Rule 56(c)(4) and FRE 602 and 701, that is testimony relating to those facts which they personally perceived through first-hand knowledge or observation and the logical inferences and opinions drawn from what they have observed. As is clear, from his declaration, NIS Sullivan did not perform a scientific, mechanical, or diagnostic examination or test, and his declaration

merely provides a descriptive summary of what he observed of the packages and an inventory of their contents.

Furthermore, 3BTech's request that the Court strike NIS Sullivan's declaration because it was denied an opportunity to depose NIS Sullivan regarding his examination of and observations regarding the samples misses the mark. 3BTech fails to disclose to the Court that it produced the samples that are discussed in NIS Sullivan's declaration ***after*** the close of fact discovery. *See* Ex. 6. This argument, based on an untimely production of NIS Sullivan's declaration, should not be tolerated by the Court.

Finally, although 3BTech seeks to strike NIS Sullivan's declaration in its entirety, it provides no explanation for the bases for striking paragraphs 23-26, wherein NIS Sullivan discusses his own visual and physical examination of the Swagtron T881 sample produced by 3BTech, the Swagtron user manuals that accompanied the sample boxes produced by 3BTech, or the Swagtron user manuals and frequently asked questions (FAQ) articles that NIS Sullivan obtained from the official Swagtron website. Although we request that the Court deny 3BTech's motion to strike NIS Sullivan's declaration, at a bare minimum, 3BTech has not demonstrated that the entire declaration should be stricken.

III.     The Government's Additional Rule 56.3 Statement Is Supported By Admissible Evidence

Rule 56.3 requires the annexation of the factual positions described in Rule 56(c)(1)(A) to a motion for summary judgment "in a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  USCIT R. 56.3(a).  Each statement, subject to any Rule 56(c)(2) objection, must "be followed by citation to evidence which would be admissible."  USCIT R. 56.3(c).  A party

asserting that a fact cannot be genuinely disputed must support the assertion by citing to

materials in the record, such as "depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials[.]"  USCIT R. 56(c)(1)(A).  As we have

demonstrated above, the declarations of Messrs. Reiner and Benjamin, and the declaration of

NIS Sullivan are admissible and, therefore, they support our Rule 56.3 statement.

IV.    <u>3BTech Is Not Entitled To Attorney Fees And Expenses</u>

3BTech requests, pursuant to CIT Rule 37(c)(1)(A), that the Court award it "reasonable

expenses and attorney's fees associated with its efforts" to resolve this so-called dispute and to

draft its motion to strike should be denied.

USCIT Rule 37(c)(1(A) addresses a party's failure to disclose or supplement, and states

that when a party "fails to provide information or identify a witness as required by Rule 26(a) or

(e), the party is not allowed to use that information or witness to supply evidence on a motion, at

a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Ct. Int'l

Trade R. 37(c)(1)(A).  The rule further provides that, "[i]n addition to or instead of this sanction,

the court, on motion and after giving an opportunity to be heard: (A) may order payment of the

reasonable expenses, including attorney's fees, caused by the failure."  *Id*.  Because the

declarations and exhibits comport with the Court's rules, the Government did not fail to provide

information or identify a witness pursuant to USCIT Rules 26(a) or (e), and 3BTech's motion to

strike lacks merit, 3BTech is not entitled to attorney fees and expenses associated with its

motion.

Finally, according to 3BTech, it "attempted to amicably resolve the issues raised in this motion with Defendant before filing this motion by contacting Defendant's counsel, Ms. Mikki Cottet, on September 27, 2024. However, Defendant's counsel, Ms. Mikki Cottet, refused to resolve these issues and declined to withdraw the filings indicated in this motion." Pl. Mot. at 2. Although the Court's rules do not require consultation prior to the filing of a motion to strike, 3BTech's characterization of its consultation efforts is not correct.

The Government filed its cross-motion for summary judgment, additional Rule 56.3 statement, and supporting declarations on September 4, 2024. For a period of approximately 22 days, 3BTech was aware that it intended to file a motion to strike; however, 3BTech's counsel did not contact counsel for the Government until the day that 3BTech intended to file its motion. *See* Ex. 7. After reviewing 3BTech's initial email, which provided no substantive information as to the bases for its request, the Government requested a copy of 3BTech's draft motion to strike to make an informed decision as to how to respond to 3BTech's request. *Id*. 3BTech's counsel provided the Government with the draft motion to strike and requested that the Government advise by "EOB today whether Defendant agrees to withdraw the filings indicated in the motion." *Id*. The Government declined to withdraw the declarations and documents. *Id*. 3BTech provided the Government with less than one business day of having the pertinent arguments to make an informed decision, and its attempt to resolve the issue cannot be described as reasonable.

**WHEREFORE**, defendant respectfully requests that an Order be entered denying plaintiff's motion to strike in its entirety, denying the request for fees, and granting defendant such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:                                    /s/Mikki Cottet
                                                 MIKKI COTTET
TAYLOR R. BATES                                  Senior Trial Counsel
Attorney                                         U.S. Department of Justice
Office of Assistant Chief Counsel                Civil Division
International Trade Litigation                    Commercial Litigation Branch
U.S. Customs and Border Protection               PO Box 480
                                                 Ben Franklin Station
                                                 Washington, DC 20044
                                                 Telephone: 202-307-0962
                                                 Facsimile: 202-514-7965
                                                 E-mail: Mikki.Cottet@usdoj.gov

October 18, 2024                                 Attorneys for Defendants

30

## <u>CERTIFICATE OF SERVICE</u>

I, Mikki Cottet, hereby certify that on this day, October 18, 2024, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to all counsel of record.

<u>/s/ Mikki Cottet</u>