**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JANE A. RESTANI, SENIOR JUDGE**
-------------------------------------------------------------------- X
3B TECH, INC.,                                            :
                                                          :
      **Plaintiff,**                                  :
                                                          :
      *v.*                                           :    No. 21-cv-00026
                                                          :
UNITED STATES,                                            :
                                                          :
      **Defendant.**                                 :
-------------------------------------------------------------------- X

## BRIEF OF PROPOSED *AMICUS CURIAE* GOLABS, INC., d/b/a GOTRAX

 

NEVILLE PETERSON LLP
*Counsel to Proposed Amicus Curiae*

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: February 14, 2025

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES .......................................................................................................... ii
SUMMARY OF ARGUMENT ......................................................................................................2
RELEVANT HTSUS PROVISIONS: ............................................................................................3
ARGUMENT ...................................................................................................................................5
I.     Section Note 1 to Section XVII, HTSUS, and Note 4 to Chapter 87, HTSUS Direct Classification of Children's Hoverboards to Heading 9503. ...............................................5
II.    If the Court Determines that a Particular Dicycle is a "Children's Cycle," it Must Then Determine if it is a "Toy" of Heading 9503. .......................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Agfa Corp. v. United States*, 520 F.3d 1326 (Fed. Cir. 2008) .......................................................... 12
*Aromont USA, Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012) ............................................ 14
*BMW of N. Am. LLC v. United States,* 926 F.3d 1291 (Fed. Cir. 2019) .......................................... 6
*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999) .................................................. 10
*Deckers Outdoor Corp. v. United States*, 714 F.3d 1363 (Fed. Cir. 2013). .................................. 12
*Dependable Pkg. Solutions Inc. v. United States*, 757 F.3d 1374 (Fed. Cir. 2014) ..................... 14
*Honda of America Mfg Co. v. United States*, 607 F.3d 771 (Fed. Cir. 2010) ................................ 6
*Infantino LLC v. United States*, 28 C.I.T. 1945 (2014). .................................................................. 13
*King v. Burwell*, 576 U.S. 473 (2015) ................................................................................................ 6
*Krummell Imports v. United States*, 34 Cust. Ct. 151 (1965) ........................................................ 13
*Midwest of Cannon Falls v. United States*, 122 F.3d 1423 (Fed. Cir. 1997) ................................ 12
*Minnetonka Brands Inc. v. United States*, 24 C.I.T. 645 (2000). .................................................. 13
*New York Merchandise Corp. v. United States*, 62 Cust. Ct. 38 (1969) ....................................... 13
*Nissan Motor Mfg. Corp U.S.A. v. United States*, 693 F. Supp. 1183 (Ct. Int'l Tr. 1988) ............. 9
*Primal Lite, Inc. v. United States*, 182 F.3d 1362 (Fed. Cir. 1999). ........................................ 13, 14
*Processed Plastic Co. v. United States*, 473 F.3d 1164 (Fed. Cir. 2006) ........................... 6, 13, 14
*Pustet & Co., v. United States*, 13 Ct. Cust. 530 (1926) ................................................................... 9
*Rubie's Costume Co. v. United States*, 337 F.3d 1350 (Fed. Cir. 2003). ..................................... 12
*Second Nature Designs Ltd., v. United States*, 660 F. Supp. 3d 1352 (Ct. Int'l Tr. 2023). ............ 6
*Springs Creative Prods. Grp. v. United States*, 37 C.I.T. 1222 (2013). .................................... 6, 13
*Streetsurfing LLC v. United States,* 11 F. Supp. 3d 1287 (Ct. Int'l Trade 2014) ......................... 15
*Target General Merchandise Inc. v. United States*, 392 F. Supp. 3d 1326 (Fed. Cir. 2019) ....... 14
*Telebrands Corp. v. United States*, 865 F. Supp. 1277 (Ct. of Int'l Tr. 2012). .............................. 6
*United States v. Carborundum Co*., 536 F.2d 373 (C.C.P.A. 1976) ............................................. 14

**Other Authorities**

Ammon Shea, *Words We're Watching: Hoverboard,* Merriam-Webster,
   https://www.merriam-webster.com/wordplay/when-did-we-start-talking-about-
   hoverboards ...................................................................................................................................... 8
Automotive Dictionary, Definition of cycle, https://automotivedictionary.org/cycle. ................ 10
Matt Petronzio, *Dicycles: The Scooter Gets an Upgrade,* available at:
   https://mashable.com/archive/electric-dicycles#GrMUfZgBuZqI . ........................................... 11
Merriam Webster Dictionary, Definition of velocipede , https://www.merriam-
   webster.com/dictionary/velocipede. ............................................................................................ 11
Merriam-Webster Dictionary, Definition of Dicycle, https://www.merriam-
   webster.com/dictionary/dicycle. ............................................................................................. 7, 11
Oxford Dictionary, Definition of Dicycle,
   https://www.oed.com/dictionary/dicycle_n?tl=true. ............................................................. 7, 11
Segway Ninebot S, https://store.segway.com/ninebot-s. .................................................................. 7
Smithsonian Institute, The Development of the Velocipede,
   https://www.si.edu/spotlight/si-bikes/si-bikes-velocipede. ....................................................... 11
Stanley Kubrick's 2001: A Space Odyssey (Stanley Kubrick Productions 1968). ........................ 8
Wikipedia, Dicycle, https://en.wikipedia.org/wiki/Dicycle ............................................................. 9

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JANE A. RESTANI, RENIOR JUDGE**

------------------------------------------------------------------ X
3B TECH, INC.,                                                  :
        **Plaintiff,**                                    :
        *v.*                                             :   No. 21-cv-00026
UNITED STATES,                                                  :
        **Defendant.**                                   :
------------------------------------------------------------------ X

### BRIEF OF PROPOSED *AMICUS CURIAE*, GOLABS, INC.

Pursuant to Rules 7(b) and 76 of the Rules of the Court of International Trade ("USCIT R."), *amicus curiae* GoLabs, Inc. d/b/a GOTRAX (hereinafter "GoLabs"), respectfully submits this *amicus curiae* brief which addresses what *amicus* submits is the correct legal analysis for determining the classification of "hoverboards," the colloquial name given to the motorized dicycles which are the subject of this case.

GoLabs does not urge summary judgment in favor of either party. Indeed, as the classification of the merchandise turns on the question of "principal use," a contested issue of fact, GoLabs believes trial in this case may be necessary. The purpose of this submission is to invite the Court's attention to the possibility that the proper classification of "hoverboards" may depend on whether the products at issue in a particular case are for children or adults.

### INTEREST OF AMICUS CURIAE

GoLabs, based in Carrollton, Texas, is an importer of motorized dicycles, also known as "hoverboards," which are designed for use by children. The physical characteristics of GoLabs' hoverboards dedicate them for use by children, and make them unsuitable for use by adults or as a viable means of transportation. GoLabs is the plaintiff in one pending action filed in this Court, *GoLabs Inc., d/b/a/ GOTRAX*, Court No. 25-00003, in which the same provisions of the

Harmonized Tariff Schedule of the United States ("HTSUS") involved in this case are at issue. Customs classified GoLabs' products in liquidation as "other vehicles" of subheading 8711.60.0090, HTSUS, and assessed 25% *ad valorem* duties as the goods are "products of China." GoLabs contends that the products are properly classifiable as "toys" under subheading 9503.00.0090, HTSUS, and are unconditionally free of duty. The interpretation of these subheadings in 3B Tech's litigation may impact GoLabs' interests with respect to its own suit.

Similar to Plaintiff in this action, GoLabs imported products are "self-balancing electric scooters," which are commonly referred to as "hoverboards."

GoLabs' hoverboards are compact, motorized dicycles with two wheels in parallel, connected by a central platform on which the rider stands. The platform is equipped with sensors and gyroscopic balancing technology, which provide balance and allow for responsive movement. Riders control the hoverboard by shifting their body weight to initiate forward and backward motion or to execute turns. GoLabs' hoverboards are intended for individuals aged eight years and older. They can accommodate a user with a maximum weight of 176 pounds. Their top speed is 6.2 miles per hour, and their traveling range on a full battery charge is 3.1 miles, dependent on riding conditions and the weight of the rider. They are unsuitable for use on uneven surfaces. They are not waterproof, and their 90-day warranty does not cover water damage.

As the GoLabs merchandise is generally similar to the merchandise which is the subject of this action, the company has an interest in the analytical framework which the court utilizes in this action.

## SUMMARY OF ARGUMENT

Proposed *amicus curiae* GoLabs poses two principal points of analysis.

*First,* under a General Rule of Interpretation ("GRI") 1 classification analysis, the Court is required to take into account relevant Section and Chapter Notes, as well as the tariff headings under consideration. In this case, Note 1 to Section XVII and Note 4 to Chapter 87 of the HTSUS, direct "children's cycles," such as GoLabs' child-designed dicycles, to classification under heading 9503, HTSUS.

*Second*, evidence to be presented in respect to GoLabs' products will establish that they are principally used for the amusement of children, compelling their classification as a toy of Heading 9503, HTSUS. Once Heading 8711, HTSUS, is eliminated as a basis of classification, the so-called "*Streetsurfing* factors" for determining what qualified as a "wheeled toy," which are not binding on the Court, become of less significance in resolving the classification of the merchandise.

That dicycles for children are classified under Heading 9503, HTSUS, does not preclude the classification of other, similar goods, under Heading 8711, HTSUS.

## RELEVANT HTSUS PROVISIONS:

## Harmonized Tariff Schedule of the United States

## General Rules of Interpretation

1. Classification of goods in the tariff schedule shall be governed by the following principles: The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

2. (a) Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article. It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled.

   (b) Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances.

3

Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

3. When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:

   a. The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

   b. Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

   c. When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

**Harmonized Tariff Schedule of the United States**

**Additional Rules of Interpretation:**

1. In the absence of special language or context which otherwise requires—

   a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use;

**Harmonized Tariff Schedule of the United States:**

**Section and Chapter Notes**

<u>Note 1 to Section XVII</u>

> This section does not cover articles of heading 9503 or 9508, or sleds, bobsleds, toboggans or the like of heading 9506.

\*\*\*

4

Chapter Note 4 to, Chapter 87:

> 4. Heading 8712 includes all children's bicycles. Other children's cycles fall in heading 9503.

**Harmonized Tariff Schedule of the United States:**

**Chapter 87**

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 8711 | | Motorcycles (including mopeds) and cycles fitted with an auxiliary motor, with or without side-cars; side-cars: |
| | | *          *          * |
| 8711.60 | | With electric motor for propulsion |
| 8711.60.00 | 50 | Of an output not exceeding 250W |

**Chapter 95**

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 9503 | | Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof |
| | | * |
| 9503.00.00 | 90 | Other |

**ARGUMENT**

**I.    Section Note 1 to Section XVII, HTSUS, and Note 4 to Chapter 87, HTSUS Direct Classification of Children's Hoverboards to Heading 9503.**

Section Note 1 to Section XVII, HTSUS, reads "[t]his section does not cover articles of heading 9503 or 9508, or sleds, bobsleds, toboggans or the like of heading 9506." GRI 1 to the HTSUS provides, in relevant part, that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require," according to the subsequent GRIs. The GRIs are

5

applied in numerical order, and when goods may be classified using GRI 1, they must be. *Honda of America Mfg Co. v. United States*, 607 F.3d 771, 731 (Fed. Cir. 2010). GRI 1 is paramount. *Telebrands Corp. v. United States*, 865 F. Supp. 1277, 1280 (Ct. of Int'l Tr. 2012).

GRI 1 indicates that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes" and, "provided such headings or notes do not otherwise require," according to the subsequent GRIs. The court "must read the words in their context and with a view to their place in the overall statutory scheme." *Second Nature Designs Ltd., v. United States*, 660 F. Supp. 3d 1352, 1372 (Ct. Int'l Tr. 2023). *See also BMW of N. Am. LLC v. United States,* 926 F.3d 1291, 1299 (Fed. Cir. 2019) (quoting *King v. Burwell*, 576 U.S. 473, 486 (2015)). Therefore, under GRI 1, if plaintiff's product is classified in Heading 9503, classification under the Government's proposed heading in inapplicable.

Any GRI 1 analysis must take account of the Section and Chapter Notes which direct children's cycles out of Chapter 87, HTSUS and into Heading 9503, HTSUS Note 1 to Section XVII , HTSUS commands that "[t]his section does not cover articles of heading 9503 … ." Thus, if it is established that any hoverboard is of a class or kind of merchandise principally used for the amusement of children or adults, classification in Section XVII and Chapter 87 is precluded. *See, e.g., Processed Plastic Co. v. United States*, 473 F.3d 1164, 1170 (Fed. Cir. 2006). The courts have determined that a toy of Heading 9503 is "an object primarily designed and used for pleasurable diversion, as opposed to practicality or utility." *Springs Creative Prods. Grp. v. United States*, 37 C.I.T. 1222 (2013).

Moreover, Note 4 to HTSUS 87, HTSUS, sets forth a special rule regarding "children's cycles," providing that "Heading 8712 includes all children's bicycles. **Other children's cycles fall in heading 9503.**" (Emphasis added). The next inquiry is whether a children's hoverboard

6

falls within the meaning of the phrase "Other children's cycles," as used in the Chapter Note. The answer to this inquiry is yes.

The product at issue in this case, and in GoLabs', case, are "dicycles." A "dicycle" (also known as a diwheel) is a device with two wheels side by side, unlike single-track vehicles such as motorcycles and bicycles, which have one wheel followed by another. The Oxford English Dictionary defines a "dicycle" as "[a] pedal-powered vehicle with two large wheels placed parallel to one another, instead of being in line as in a bicycle; esp. a vehicle of the design devised by E. C. F. Otto.[1] The Merriam-Webster Dictionary defines a "dicycle" as "a velocipede having the two wheels parallel instead of in the same line."[2] The term "dicycle" has been in use since at least 1877.[3]

More recently, dicycles have been equipped with electric motors for propulsion, and in some cases, with gyroscopic balancing technology. Segway, a producer of motorized vehicles with gyroscopic balancing technology, is recognized as a manufacturer of dicycles. *See* Segway Ninebot S, https://store.segway.com/ninebot-s.

. The merchandise which is the subject of this case, as in Golabs' separate action, consists of electrically-powered dicycles with self-balancing electric gyroscopic technology. They are marketed using the name "hoverboards," which is something of a misnomer. The term "hoverboard" was not widely used before the 1989 Robert Zemeckis movie *Back to the Future,*

---

[1] *See* Oxford Dictionary, Definition of Dicycle, https://www.oed.com/dictionary/dicycle_n?tl=true.

[2] *See* Merriam-Webster Dictionary, Definition of Dicycle, https://www.merriam-webster.com/dictionary/dicycle.

[3] *See* Oxford Dictionary Definition of Dicycle, Meaning and Use. https://www.oed.com/dictionary/dicycle_n?tl=true.

7

*Part II*. The movie's protagonist, Marty McFly (played by the actor Michael J. Fox) traveled into his future (the year 2015) and used an anti-gravity "hoverboard" device resembling the skateboard he used in his "present" year of 1985. Sadly, cinema is once again ahead of reality[4], and such anti-gravity devices have neither been invented nor commercialized. But the use of the term "hoverboards" to describe these goods capitalizes on the commercial and popular success of the Back to the Future films, perhaps appealing to the consumer more than the older term "dicycle." *See* Ammon Shea, *Words We're Watching: Hoverboard,* Merriam-Webster, https://www.merriam-webster.com/wordplay/when-did-we-start-talking-about-hoverboards.

But Note 4 to Chapter 87, HTSUS, directs the Court to other questions essential to its classification analysis. First, is the product at bar an "other cycle," *i.e.*, one other than a bicycle? Indeed, it is—*dicycle*—and is characterized by the parallel (rather than in-line) placement of its two wheels. Second, is the product a "children's cycle"? If that question is answered in the affirmative, then the product is excluded from classification in Chapter 87, HTSUS, and must instead be classified in Heading 9503, by operation of the governing notes.

In this regard, Heading 8711, HTSUS, comes into play as a possible classification only where the Section Note and Chapter Note do not direct the product to Heading 9503.

In this case, the government reads the term "children's cycles" other than bicycles to include only tricycles. *See* Government Brief at 25-26, ECF 36. Amicus submits that this reading is incorrect, and overlooks "dicycles." Chapter Note 4 to Chapter 87, HTSUS provides that "Heading 8712 includes all children's bicycles. Other children's cycles fall in heading 9503." It does not limit the products directed to Heading 9503 to "tricycles." Rather it means "children's

---

[4] *See also, e.g.,* Stanley Kubrick's 2001: A Space Odyssey (Stanley Kubrick Productions 1968).

8

cycles" other than bicycles. In addition, where Congress specifies the things which fall within the scope of an enactment, and fails to include others, the exclusion must be presumed intentional and respected. *See Pustet & Co., v. United States*, 13 Ct. Cust. 530, 532 (1926); *see also Nissan Motor Mfg. Corp U.S.A. v. United States*, 693 F. Supp. 1183, 1186 (Ct. Int'l Tr. 1988), aff'd, 884 F.2d 1375 (Fed. Cir. 1989). The Government's analysis fails to give meaning to every word in Note 4 to Chapter 87.

> The open-source encyclopedia Wikipedia notes:
>
> A dicycle (/ˈdaɪsɪkəl/[1]) (also known as a diwheel) is a vehicle with two parallel wheels, side by side, unlike single-track vehicles such as motorcycles and bicycles, which have two wheels inline. Originally used to refer to devices with large wheels and pedals, the term is now used in relation to **powered self-balancing scooters with smaller wheels and no pedals such as the Segway PT and the self-balancing hoverboard.**

Wikipedia, Dicycle, https://en.wikipedia.org/wiki/Dicycle (last accessed February 11, 2025) (Emphasis added). It further notes that "The self-balancing scooter is a category of personal transporter which includes all self-balancing powered portable devices with two parallel wheels that includes the Segway PT, the Segway mini PRO and the self-balancing hoverboard." *Id.* It features a photograph of a "self-balancing scooter" that closely resembles GoLabs' product:

9



The common meaning of "children's cycle" covers products such as GoLabs' toy hoverboards. In interpreting the terms of a tariff provision "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Id.* There are many definitions of "cycles" that include merchandise other than bicycles and tricycles. According to the Automotive Dictionary, a "cycle" is:

> a vehicle with one or more wheels (usually spoked) where the rider/driver straddles the vehicle as a bicycle, motorcycle, tricycle, etc. It also includes other vehicles adapted from a traditional cycle where the rider/driver no longer straddles the vehicle (recumbent cycle, four-wheel side-by-side pedal powered vehicle).

*See* Automotive Dictionary, Definition of cycle, https://automotivedictionary.org/cycle.

Other dictionaries recognize "dicycles" as a distinct form of "cycle." According to the Merriam-Webster Dictionary, a dicycle is a "velocipede[5] having the two wheels parallel instead of in the same line." *See* Merriam-Webster Dictionary, Definition of Dicycle, https://www.merriam-webster.com/dictionary/dicycle. The Oxford English Dictionary defines "dicycle" as a "pedal-powered vehicle with two large wheels placed parallel to one another, instead of being in line as in a bicycle," and recognizes the term's usage dating back as far as 1887 and demonstrates its use in U.S. patents. *See* Oxford Dictionary Definition of Dicycle. https://www.oed.com/dictionary/dicycle_n?tl=true.

The term "dicycle" is also a term used in commerce. A 2013 article details recent innovations by manufacturers on similar products. *See, e.g.,* Matt Petronzio, *Dicycles: The Scooter Gets an Upgrade,* available at: https://mashable.com/archive/electric-dicycles#GrMUfZgBuZqI . (last accessed February 11, 2025).

Without question, the hoverboards at issue in this case, as in GoLabs' case, are dicycles. The products contain two wheels in a parallel rather than a single line. Therefore, the dicycles, if intended for use by children, are classified in heading 9503, HTSUS, under GRI I and instructions from Note 1 to Section XVII, HTSUS, and Chapter Note 4 to Chapter 87, HTSUS. This analysis is an important part of the GRI analysis for classification of these products.

In this regard, we note that the Explanatory Note to Heading 8711 from the World Customs Organization provides a description of the type of item at issue in this case. The Explanatory Note explains that the:

---

[5] Mirriam-Webster also defines velocipede as "a lightweight wheeled vehicle propelled by the rider: such as a tricycle and archaically a bicycle. *See* Merriam Webster Dictionary, Definition of velocipede , https://www.merriam-webster.com/dictionary/velocipede.  Historically, bicycles and tricycles were referred to as velocipedes. *See* Smithsonian Institute, The Development of the Velocipede, https://www.si.edu/spotlight/si-bikes/si-bikes-velocipede.

11

> … heading also covers two-wheeled, electrically-powered transportation devices, designed for carrying a single person, for use within low speed areas such as pavements (sidewalks), paths, and bicycle lanes. Their technology allows the rider to stand upright while a system composed of gyroscope sensors and multiple onboard microprocessors maintains both the device's and rider's balance on two independent, non-tandem wheels.

Explanatory Note to Heading 87.11. Explanatory Notes are "generally indicative of proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1239 (Fed. Cir. 2008) (citation omitted). However, "[u]nlike Chapter Notes, Explanatory Notes are not legally binding." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 n. 1 (Fed. Cir. 2013). The Section and Chapter Notes must be consulted and applied before the Explanatory Notes may be consulted.

In this case, the Explanatory Note to Heading 8711 indicates that the heading covers micromobility items featuring gyroscopic balancing systems. However, the Heading applies to such items **only** if they are not directed to Heading 9503 by the Section and Chapter Notes. Section Note 1 to Section XVII indicates that "toys" do not fall within the Section, which includes Chapter 87. Note 4 to Chapter 87 indicates that "children's cycles, other than bicycles, are to be classified in Heading 9503."

Under GRI 1, the classification analysis must first focus on whether the product at bar is an "other children's cycle" based on Section Note 1 to Section XVII and Chapter Note 4 to Chapter 87, before consulting the Explanatory Notes for assistance.

In *Midwest of Cannon Falls v. United States*, 122 F.3d 1423, 1428 (Fed. Cir. 1997), the appellate court held that "[a]bsent a clearer showing of congressional intent," the Court should not "import incidental characteristics of the examples of the explanatory notes into the headings of the HTSUS." It is neither an exhaustive nor preclusive listing of goods covered by the Heading. *See Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003).

12

Whether a cycle is a "children's cycle" is a fact-intensive exercise. In making this necessary determination, the Court may consider such factors as the size of the article, *see, e.g., New York Merchandise Corp. v. United States*, 62 Cust. Ct. 38 (1969), whether the product is too fragile for use by children, *see, e.g., Krummell Imports v. United States*, 34 Cust. Ct. 151 (1965), whether the product is susceptible of safe use by children, whether it conforms to government safety standards applicable to children's articles, the way in which the article is marketed, and the principal use of the article, among other factors.

**II.     If the Court Determines that a Particular Dicycle is a "Children's Cycle," it Must Then Determine if it is a "Toy" of Heading 9503.**

Once the Court determines that a hoverboard is a "children's cycle," it must next determine whether it is a "toy" of the kind described in Heading 9503, HTSUS. The Court has determined a toy to be "an object primarily designed and used for 'pleasurable diversion'" *See Springs Creative Grp. Inc. v. United States*, 37 C.I.T. 1222, 1233 (2013); *see also Infantino LLC v. United States*, 28 C.I.T. 1945, 1950-51 (2014). The principal use of a toy is amusement, diversion or play value, rather than practicality. *Minnetonka Brands Inc. v. United States*, 24 C.I.T. 645 (2000). The Explanatory Notes to Heading 9503 indicate that the "wheeled toys" of that heading may be of many types, and that "[w]heeled toys may be simply drawn or pushed by another person or driven by a motor." Explanatory Notes 95.03.

It is well-established that, to determine whether subject merchandise is a "toy" under Chapter 95, HTSUS, its principal use must be for "amusement, diversion, or play." *See Processed Plastic Co. v. United States* 473 F.3d 1164, 1170 (Fed. Cir. 2006). Additional U.S. Rule of Interpretation ("ARI") 1 "dictates how tariff classification should be construed when the classification decision is controlled by use." *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1363 (Fed. Cir. 1999). Essentially, the "principal use" of an article is the principal use of the "class

13

or kind" of merchandise to which the imported goods belong, or stated another way, ARI 1(a) requires the classifier to determine the group of goods that "are commercially fungible with the imported goods." *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1313 (Fed. Cir. 2012) (citation omitted).

In identifying the goods constituting the "class or kind" of merchandise, it is proper to consider the factors outlined in *United States v. Carborundum Co*., 536 F.2d 373, 377 (C.C.P.A. 1976); *see also Processed Plastic Co. v. United States*, 473 F.3d 1164, 1170 (Dec. 2006) (noting that the *Carborundum* factors "are simply areas of inquiry that may prove useful in determining what is the principal use of merchandise alleged to be a 'toy.'") The *Carborundum* factors guide the determination of the "class or kind" of goods to which a product belongs, focusing on use, physical characteristics, commercial reality, and trade recognition. The *Carborundum* factors include use of the merchandise, physical characteristics of the merchandise, economic practicality, expectations of the ultimate purchasers, channels of trade, environment of sale, and recognition in trade. *Aromont USA, Inc*., 671 F.3d at 1313-16. The *Carborundum* factors guide the determination of the "class or kind" of goods to which a product belongs, focusing on use, physical characteristics, commercial reality, and trade recognition.

The identification of a "class or kind" of merchandise also involves an examination of goods which are "commercially fungible" with the article under consideration. *Target General Merchandise Inc. v. United States*, 392 F. Supp. 3d 1326 (Fed. Cir. 2019); *Dependable Pkg. Solutions Inc. v. United States*, 757 F.3d 1374 (Fed. Cir. 2014); *Primal Lite, Inc. v. United States*, 182 F.3d 1362 (Fed. Cir. 1999).

We will not belabor the Court with an examination of the *Carborundum* factors as applied to *amicus'* merchandise, but expect that such an analysis, when conducted, will lead to a

14

determination that *amicus'* products are of a class or kind of merchandise principally used for amusement or diversion by children.

In addition, in *Streetsurfing LLC v. United States,* 11 F. Supp. 3d 1287 (Ct. Int'l Trade 2014), the Court announced standards for determining whether a product is a "wheeled toy" as described in Heading 9503. The factors suggest that wheeled toys classified in heading 9503, HTSUS should have certain characteristics such as : (1) the absence of a training requirement prior to its use; (2) the absence of a meaningful risk of injury involved in its use; (3) the lack of acquired skill to fully utilize the item; (4) the lack of exercise or athletic aspect in the item's use; and (5) the presence of an assistive device." *Id.* at 1335.  Again, *amicus* expects that an application of these factors to its product will indicate that they are "wheeled toys" classifiable in Heading 9503.

## CONCLUSION

A*micus curiae,* GoLabs, Inc., hopes that this submission will be of assistance to the Court in determining the proper classification of hoverboards.

                                      Respectfully submitted,

                                      /s/ John M. Peterson
                                      John M. Peterson
                                      Richard F. O'Neill
                                      Patrick B. Klein
                                      NEVILLE PETERSON LLP
                                      *Counsel for Plaintiff*
                                      One Exchange Plaza
                                      55 Broadway, Suite 2602
                                      New York, NY 10006
                                      (212) 635-2730
                                      jpeterson@npwny.com

Dated: February 14, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. JANE A. RESTANI, RENIOR JUDGE**

------------------------------------------------------------------ X
3B TECH, INC.,                                  :
                                                :
    **Plaintiff,**                             :
                                                :
    *v.*                                      :  No. 21-cv-00026
                                                :
UNITED STATES,                                  :
                                                :
    **Defendant.**                             :
------------------------------------------------------------------ X

## CERTIFICATE OF COMPLIANCE

    Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 4,169 words.

    Respectfully submitted,

    /s/ Patrick B. Klein
        Patrick B. Klein