**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HONORABLE JANE A. RESTANI, JUDGE**

3BTECH, INC.,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Court No. **21-cv-00026**

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S ADDITIONAL RULE 56.3 STATEMENT

In accordance with Rule 56.3 of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, 3BTech, Inc. ("Plaintiff" or "3BTech"), sets forth the following responses and objections to Defendant's Additional Rule 56.3 Statement (ECF No. 36-2) ("SOF").

Pursuant to USCIT Rule 56.3, motions for summary judgment must include a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried. The statements must be "short and concise" and limited to "material facts." USCIT Rule 56.3. Plaintiff objects to Defendant's SOF on the following bases: (1) many statements are not short or concise, but rather comprise multiple issues; (2) many statements are not limited to material facts, but also contain opinions, commentary, arguments, and statements of law; and (3) many statements are not adequately supported by admissible evidence. Finally, almost the entirety of Defendant's SOF is merely a narrative restatement of declarations submitted by Mr. Edward Benjamin, Mr. Matthew Sullivan, and Mr. Norbert (Bert) Reiner after the close of discovery and after Plaintiff had already filed its motion for summary judgment, rather than reference to facts and evidence in this case. Neither Mr. Reiner nor Mr. Benjamin are qualified to provide expert testimony relating to hoverboards. Notwithstanding and without waiving these objections, Plaintiff responds to Defendant's SOF below.

Although Plaintiff objects to some of Defendant's statements and denies some of Defendant's statements, nothing in Defendant's SOF raises a genuine dispute as to any material fact for the purposes of Plaintiff's motion for summary judgment.

1.      Human powered and electrically powered vehicles that are used for transportation fall within the micro-mobility vehicles industry. (Benjamin Decl.) ¶ 11.

**Response**: Objects to the extent that terms "human powered … vehicles that are used for transportation," "electrically powered vehicles that are used for transportation," and "micro-mobility vehicles industry" are undefined, vague, and ambiguous. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve vehicles that are used for transportation. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "vehicles" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* Federal Rule of Evidence ("FRE") 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that hoverboards or self-balancing electric scooters that are the subject of this case (hereinafter "Hoverboards") are used for

transportation because Hoverboards are wheeled toys. *See* Plaintiff's Exhibits ("Pl. Ex.") A, B, C, D, E, F, G, H, I, N, O, U. Further denies any inference that Hoverboards fall within the micro-mobility vehicles industry because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* Plaintiff's Statement of Undisputed Material Facts (ECF No. 31-1) ("PSUF") 73, 74, 75. User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Harmonized Commodity Description and Coding System Explanatory Notes ("Explanatory Notes") to Heading 9503, Harmonized Tariff Schedule of the United States ("HTSUS"), refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

2.      The micro-mobility industry includes a class of vehicles known as Light Electric Vehicles (LEV).  Def. Ex. 3, Benjamin Decl. ¶ 11.

**Response**: Objects to the extent that terms "micro-mobility industry," "Light Electric Vehicles," and "LEV" are undefined, vague, and ambiguous. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve Light Electric Vehicles (LEV). Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "vehicles" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact

to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not

based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable

principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of

the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving

these objections, admits that Mr. Benjamin expressed this opinion except denies any inference

that Hoverboards are Light Electric Vehicles or LEVs because Hoverboards are wheeled toys.

*See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Further denies any inference that Hoverboards fall

within the micro-mobility vehicles industry because Hoverboards are wheeled toys. *See* Pl. Ex.

A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement

regarding Hoverboards because Mr. Benjamin has no prior professional experience with

Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702.

*See* PSUF 73, 74, 75. User manuals for children's cars powered by a motor that are specifically

listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such

children's cars as "vehicles." *See* Pl. Ex. Q and R.

      3.      LEVs are light as compared to electric vehicles and vehicles with internal

combustion, such as cars and motorcycles, and they usually weigh less than 200 pounds.  Def.

Ex. 3, Benjamin Decl. ¶ 11.

      **Response**: Objects to the extent that terms "LEVs," "light," "electric vehicles," and

"vehicles with internal combustion" are undefined, vague, and ambiguous. Further objects on the

ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented

in this case) because this case does not involve LEVs, electric vehicles, or vehicles with internal

combustion. Further objects on the ground that this statement consists of a legal conclusion or

legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the terms

"vehicles," "cars," and "motorcycles" are legal terms subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75. User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

4.      The LEV industry covers a wide range of primarily battery-operated or electric vehicles, including one- to four- wheeled vehicles, cycles fitted with an auxiliary motor, and two-wheeled electric transportation devices designed for carrying a single person, such as the electric bicycle, self-balancing monowheel, the Segway, electric skateboards, electric scooters, mopeds, light electric motorcycles, and hoverboards.  Def. Ex. 3, Benjamin Decl. ¶ 12.

**Response**: Objects to the extent that terms "LEV," "battery-operated vehicles," "electric vehicles," "one-wheeled vehicles," "four-wheeled vehicles," "cycles fitted with an auxiliary

motor," and "two-wheeled electric transportation devices designed for carrying a single person"
are undefined, vague, and ambiguous. Further objects on the ground that this statement is not
"short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing.
Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the
legal issues presented in this case) because this case does not involve LEV industry, battery-
operated or electric vehicles, one- to four-wheeled vehicles, cycles fitted with an auxiliary motor,
two-wheeled electric transportation devices designed for carrying a single person, electric
bicycles, self-balancing monowheels, Segways, mopeds, or light electric motorcycles. Further
objects on the ground that this statement consists of a legal conclusion or legal argument and is
not a statement of fact as USCIT Rule 56.3(a) requires because the terms "vehicles," "cycles
fitted with an auxiliary motor," and "two-wheeled electric transportation devices designed for
carrying a single person" are legal terms subject to the Court's interpretation. The Court is
charged with interpreting the law, not the expert witness. *United States v. Caputo*, 517 F.3d 935,
942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and
regulations. That's a subject for the [C]ourt, not for testimonial experts. The only legal expert in
a federal courtroom is the judge." (Citation omitted). To the extent this statement is based on the
Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward
Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience,
training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized
knowledge that will help the trier of fact to understand the evidence or to determine a fact in
issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's
testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion
does not reflect a reliable application of the principles and methods to the facts of the case. *See*

FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies that Hoverboards fall within the LEV industry because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Further denies that Hoverboards are battery-operated or electric vehicles, one- to four-wheeled vehicles, cycles fitted with an auxiliary motor, and/or two-wheeled electric transportation devices designed for carrying a single person because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. The Merriam-Webster definition of "auxiliary" is "functioning in a subsidiary capacity," akin to providing a supportive role in a product's overall function, such as a small electric motor in an e-bike that is primarily manually powered. *See https://www.merriam-webster.com/dictionary/auxiliary* (last visited February 1, 2025). This is further confirmed by Law Insider that defines an "auxiliary engine" as "an engine designed to provide power for uses other then propulsion." *See https://www.lawinsider.com/dictionary/auxiliary-engine* (last visited February 1, 2025). The motors in the Hoverboards are not "auxiliary"; they serve as the primary means of propulsion for the user. Pl. Ex. J-1 at pp. 15-17. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75. User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

5.      LEVs use electric propulsion to move using one or more electric motors, one or more controllers, a lithium battery, and one or more sensors.  Def. Ex. 3, Benjamin Decl. ¶ 11.

**Response**: Objects to the extent that terms "LEVs," "electric propulsion," "electric motors," "controllers," and "sensors" are undefined, vague, and ambiguous. Further objects on

the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

6.    LEVs can either have fore- and aft- wheels or side-by-side wheels that are rotated through electric propulsion.  Def. Ex. 3, Benjamin Decl. ¶ 11.

**Response**: Objects to the extent that terms "LEVs," "fore-wheels," "aft-wheels," and "side-by-side wheels" are undefined, vague, and ambiguous. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education"

because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will

help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr.

Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is

not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not

reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702.

Subject to and without waiving these objections, admits that Mr. Benjamin expressed this

opinion except denies any inference that Hoverboards are LEVs because Hoverboards are

wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be

drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior

professional experience with Hoverboards and is not qualified to testify as an expert on

Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

7.    There are several different kinds of LEVs, including: (1) the electric bicycle; (2)

"scooters," a catchall category that includes electric mini scooters, the Yikebike, the electric self-

balancing monowheel; mobility scooters, and electric motor scooters that resemble light

motorcycles like the Vespa; and (3) "personal transporters" or "human transporters," including

the Segway and hoverboards.  Def. Ex. 3, Benjamin Decl. ¶ 12.

**Response**: Objects to the extent that terms "LEVs," "electric bicycle," "scooters," "mini

scooters," "Yikebike," "electric self- balancing monowheel," "mobility scooters," "electric

motor scooters that resemble light motorcycles like the Vespa," "personal transporters," and

"human transporters" are undefined, vague, and ambiguous. Further objects on the ground that

this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather

compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not

pertinent or material to the legal issues presented in this case) because this case does not involve

LEVs, electric bicycles, scooters, electric mini scooters, the Yikebike, the electric self- balancing monowheel, mobility scooters, electric motor scooters that resemble light motorcycles like the Vespa, personal transporters, human transporters, or the Segway. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies that Hoverboards are LEVs, electric bicycles, scooters, electric mini scooters, the Yikebike, the electric self- balancing monowheel, mobility scooters, electric motor scooters that resemble light motorcycles like the Vespa, personal transporters, human transporters, or the Segway because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

8.     All LEVs vehicles share the same or similar components, operating paradigms, and use patterns.  Def. Ex. 3, Benjamin Decl. ¶ 13.

**Response**: Objects to the extent that terms "LEVs," "all LEVs vehicles," "components," "operating paradigms," and "use patterns" are undefined, vague, and ambiguous. Further objects

on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs vehicles. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "vehicles" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs vehicles because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Further denies that Hoverboards share the same or similar components, operating paradigms, and use patterns with LEVs vehicles because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75. User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

9.     All LEVs have similar componentry, including one or more electric motors, a lithium battery, control circuits or controllers (also referred to as logic boards or onboard microprocessors), wiring harnesses that carry the current between the components, and sensors. Def. Ex. 3, Benjamin Decl. ¶ 13.

**Response**: Objects to the extent that terms "LEVs," "componentry," "control circuits," "controllers," "logic boards," "onboard microprocessors," "wiring harnesses," and "sensors" are undefined, vague, and ambiguous. Further objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs or share any components with LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience

with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

10.     LEVs are designed to transport a person from one place to another through use of electric propulsion.  Def. Ex. 3, Benjamin Decl. ¶ 13.

**<u>Response</u>**: Objects to the extent that the term "LEVs" is undefined, vague, and ambiguous. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs or any other devices designed to transport a person from one place to another. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Further denies that Hoverboards are designed to transport a person from one place to another because Hoverboards are wheeled toys designed for amusement, diversion, and play, rather than practicality. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior

professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

11.    Some LEVs have seats, a balance bar (*i.e.*, a structure with handlebars that ascends from the platform upward toward the chest of a user), throttles, brakes, and pedals or footrests.  Def. Ex. 3, Benjamin Decl. ¶ 14.

**Response**: Objects to the extent that the term "LEVs" is undefined, vague, and ambiguous. Further objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs and Hoverboards do not have seats, a balance bar (*i.e.*, a structure with handlebars that ascends from the platform upward toward the chest of a user), throttles, brakes, or footrests. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Further denies that Hoverboards have seats, a balance bar (*i.e.*, a structure with handlebars that ascends from the platform upward

toward the chest of a user), throttles, brakes, or footrests. *See* Pl. Ex. A (internal Ex. D). Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

12.     Certain LEVs, like the Segway and hoverboards, are designed with technology that allows a single rider to stand upright while a system composed of gyroscopes and sensors that assist with balance, steering, speed, and stopping.  Def. Ex. 3, Benjamin Decl. ¶ 14.

**Response**: Objects to the extent that the term "LEVs" is undefined, vague, and ambiguous. Further objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding

Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

13.    The different type of LEVs have different wheel sizes, ranging from approximately 2 to 29 inches.  Def. Ex. 3, Benjamin Decl. ¶ 14.

**Response**: Objects to the extent that the term "LEVs" is undefined, vague, and ambiguous. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

14.    The different kinds of LEVs operate at different maximum speeds, with some maximum speeds as low as six miles per hour and others as high as 32 miles per hour.  Def. Ex. 3, Benjamin Decl. ¶ 14.

**Response**: Objects to the extent that terms "LEVs" and "different maximum speeds" are undefined, vague, and ambiguous. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve LEVs. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Mr. Benjamin expressed this opinion except denies any inference that Hoverboards are LEVs because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

15.    A "hoverboard," including the Swagtron® hoverboards at issue, consists of two-foot pads between side-by-side wheels, small motors, gyroscopes, sensors, controllers, and a battery.  Def. Ex. 3, Benjamin Decl. ¶¶ 19, 20, & Att. A.

**Response**: To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr.

Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Hoverboards consist of footpads between two side-by-side wheels, motors powered by rechargeable batteries of a power not exceeding 250 watts (except in the case of the 300-watt motors used in the T6 model), gyroscopes, sensors, and motherboards (control boards); otherwise, denies. *See* PSUF 15, 16, 17, 18.

16.    The hoverboard is controlled through rider position and weight distribution on the footpads, the movement and shift in weight is detected by the sensors and the vehicle responds. Def. Ex. 3, Benjamin Decl. ¶ 20.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve vehicles. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "vehicles" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not

based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable

principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of

the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving

these objections, admits that Hoverboards are controlled through rider position and weight

distribution on the footpads and that the movement and shift in weight is detected by

Hoverboards' sensors, otherwise denies. Denies that Hoverboards are vehicles because

Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. User manuals for

children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory

Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

17.    When the rider leans forward on the hoverboard, with weight distribution at the

front of the footpads, the vehicle accelerates forward, and when the rider leans backward, settling

on the heels of their feet, the vehicle slows.  Turning is similarly accomplished through body

position and weight distribution to either the right or left.  Def. Ex. 3, Benjamin Decl. ¶ 20.

**Response**: Objects on the ground that this statement is not "short and concise" as

required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the

ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented

in this case) because this case does not involve vehicles. Further objects on the ground that this

statement consists of a legal conclusion or legal argument and is not a statement of fact as

USCIT Rule 56.3(a) requires because the term "vehicles" is a legal term subject to the Court's

interpretation. To the extent this statement is based on the Declaration of Edward Benjamin

(ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is

qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr.

Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact

to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not

based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable

principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of

the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving

these objections, admits that when the rider leans forward on the hoverboard, with weight

distribution at the front of the footpads, the hoverboard accelerates forward, and when the rider

leans backward, settling on the heels of their feet, the hoverboard slows; and that turning is

similarly accomplished through body position and weight distribution to either the right or left;

otherwise denies. Denies that Hoverboards are vehicles because Hoverboards are wheeled toys.

*See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. User manuals for children's cars powered by a

motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503,

HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

18.     Braking on a hoverboard is also accomplished through weight distribution and body

position; the rider stands tall, causing the sensor to signal the logic board to slow and/or stop the

vehicle.  Def. Ex. 3, Benjamin Decl. ¶ 20.

**Response**: Objects to the extent that the term "logic board" is undefined, vague, and

ambiguous. Further objects on the ground that this statement is not "short and concise" as required

by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that

this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case)

because this case does not involve vehicles. Further objects on the ground that this statement

consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule

56.3(a) requires because the term "vehicles" is a legal term subject to the Court's interpretation.

To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2),

objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that slowing and coming to a stop on a hoverboard is accomplished through weight distribution and body position; the rider stands tall, causing the gyroscope and sensor to signal the motherboard (control board) to slow and stop the hoverboard; otherwise denies. *See* Pl. Ex. J-1, T1 User Manual, "DIAGRAM OF OPERATION," p. 17 of 32. Hoverboards do not have a "braking" system; rather they automatically slow down and stop when the rider releases pressure from the pedals and "[a]lign[s] … body to an upright, straight position." *Id*. This operation pattern is similar to children's cars powered by a motor of Heading 9503, HTSUS, that "will automatically stop when the child's foot is removed from the foot pedal." *See* Defendant's Cross-motion For Summary Judgment And Reply In Further Support Of Plaintiff's Motion For Summary Judgment (ECF No. 36) ("Def. Brief") at 28. Similarly, Hoverboards will automatically stop when the child releases pressure from the pedals and "[a]lign[s] … body to an upright, straight position." *See* Pl. Ex. J-1, T1 User Manual, "DIAGRAM OF OPERATION," p. 17 of 32. Denies that Hoverboards are vehicles because Hoverboards are wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U. User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

19.     Hoverboards are intended to be used and are used as modes of transportation. Def. Ex. 1, Att. B-1 (Swagtron [Frequently Asked Questions (FAQ)] "How to Ride a Hoverboard") ("get you where you need to go without leaving you in need of a shower or change of clothes, and you'll have a lot of fun getting there"); Def. Ex. 3, Benjamin Decl. ¶¶ 19, 22, 25; Pl. Ex. J (3BTech Deposition) 76:10-21 (stating that the user manual defines how end users normally use hoverboards).

**Response**: Objects on the ground that this statement is not supported by the cited materials. None of the cited materials state that Hoverboards are intended to be used or are used as modes of transportation. To the extent this statement is based on the testimony of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies that Hoverboards are intended to be used or are used as modes of transportation because Hoverboards are intended to be used and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are

purchased as wheeled toys for kids). Avers that Defendant's Exhibit 1 does not contain Attachment B-1 as cited by Defendant; Defendant's Exhibit 1 contains Attachment B, which is a user manual for Swagtron® T380 Hoverboard and does not contain a statement referenced by Defendant.

20.    The hoverboard inventor, Shane Chen, obtained a patent for the first hoverboard that identifies the invention as a "two-wheel, self-balancing personal vehicle having independently movable foot placement sections."  *See* Def. Ex. 3, Benjamin Decl. ¶ 22, & Att. A (U.S. Patent #8,738,278 B2, issued 5-27-2014 (Chen patent)).

**Response**: To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits, except denies any inference that Hoverboards are intended to be used or are used as personal vehicles because Hoverboards are intended to be used and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). User manuals for children's cars powered by a motor that are specifically listed as wheeled

toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

21.     The Chen patent reveals components and an operating paradigm that are consistent with hoverboards being personal modes of transportation or "personal transporters." *See* Def. Ex. 3, Benjamin Decl. ¶ 22, & Att. A.

**Response**: Objects to the extent that terms "components," "operating paradigm," "personal modes of transportation," and "personal transporters" are undefined, vague, and ambiguous. Further objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve personal modes of transportation or personal transporters. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because it makes a legal conclusion about a patent, which is reserved for the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies because Hoverboards are intended to be used and are used as wheeled toys. *See* Pl. Ex. A,

B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

22.     The Chen patent reveals that the original hoverboard "art" was modeled on the preexisting "art" of the Segway inventor's patent, U.S. Patent #6,302,230 B1 (Segway patent), for personal mobility vehicles, in that the hoverboard was designed to be a smaller, portable version of the Segway with the same operating paradigm. Def. Ex. 3, Benjamin Decl. ¶ 22, & Att. A (Chen patent) and Att. B (Segway patent).

**Response**: Objects to the extent that terms "the original hoverboard," "personal mobility vehicles," and "operating paradigm" are undefined, vague, and ambiguous. Further objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve the Segway or personal mobility vehicles. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because it makes a legal conclusion about a patent, which is reserved for the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not

based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

23.    The Swagtron® catalog and user manuals identify the hoverboard models at issue as modes of personal transportation, "personal transporters," and/or "vehicles." Pl. Ex. A (internal Ex. B – Swagtron® Catalog), ECF No. 31-3, p. 8 of 49; Def. Ex. 1, Declaration of CBP National Import Specialist Matthew Sullivan (Sullivan Decl.), Att. A (T881 Swagtron® User Manual) at p. 6 (stating that the Swagtron® T881 "is a self-balancing, personal transporter that uses gyroscopic technology to revolutionize the way you travel."), Att. B (Swagtron® T380 Hoverboard User Manual) at p.3 (referring to the operation of T380 as a "vehicle," and stating "You're about to take the next step in the evolution of transportation."), p. 8 (stating, "like any mode of transportation, the SWAGTRON® has inherent hazards associated with its use (for example: losing control, falling off or riding into a hazardous situation)"), pp. 23-24 (discussing safe riding techniques, cautions, and warnings, including a warning to "Never ride your SWAGTRON® after

consumption of alcohol, drugs, or while intoxicated.  You can be arrested for drunk driving."); Att. G-4 (Swagtron FAQ "Are Hoverboards Legal in the U.S.?") at p. 3/6 (discussing hoverboards in connection with other light electric vehicles (LEVs) such as electric bikes to electric scooters and stating that "Hoverboards remain an effective and fun method of transportation, akin to roller blades or skateboards[.]"); Def. Ex. 3, Benjamin Decl. ¶ 23.

      **Response**: To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Avers that any reference to "transportation" or "vehicles" in Swagtron® materials refers to other products sold by Swagtron®, such as electric scooters and electric bikes, and not Hoverboards; Hoverboards fall under entertainment technology sector. Pl. Ex. J (Deposition of Mr. Johnny Zhu) at 59:25-60:7; *See also* https://swagtron.com/ (last visited February 4, 2025). User manuals for

children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory

Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

24.    The Swagtron® catalog states that "SWAGTRON provides customers with easy to

use, personal transportation and entertainment technology.  With hoverboards, skateboards,

scooters, bikes, and even drones, this fleet of electronics offers new favorites for kids and adults

alike.  We strive to develop devices that add safe, fun ways to create adventures every day."  Pl.

Ex. A (internal Ex. B – Swagtron® Catalog), ECF No. 31-3, p. 24 of 49; Def. Ex. 3, Benjamin

Decl. ¶ 23.

**Response**: To the extent this statement is based on the Declaration of Edward Benjamin

(ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is

qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr.

Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact

to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not

based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable

principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of

the principles and methods to the facts of the case. *See* FRE 702. Further objects on the ground

that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather

compound and confusing. Subject to and without waiving these objections, admits that catalogs

have this language, except denies any inference that Hoverboards fall under personal transportation

technology because Hoverboards are designed, intended to be used, and are used as wheeled toys

under entertainment technology sector. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits

clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to

be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments

of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Avers that any reference to "transportation" or "vehicles" in Swagtron® materials refers to other products sold by Swagtron®, such as electric scooters and electric bikes, and not Hoverboards; Hoverboards fall under entertainment technology sector. Pl. Ex. J (Deposition of Mr. Johnny Zhu) at 59:25-60:7; *See also* https://swagtron.com/ (last visited February 4, 2025). User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

25.     Swagtron user manuals state "You're about to take the next step in the evolution of transportation" or describes a specific hoverboard model as being "a self-balancing, personal transporter that uses gyroscopic technology to revolutionize the way you travel." Def. Ex. 1, Sullivan Decl., Att. A (T881 User Manual) at p. 6, Att. B (T380 User Manual) at pp. 3, 6, Att. C. (T5 User Manual) at unnumbered second page after the cover and p. 2, Att. D (T588 User Manual) at unnumbered first page after the cover and p. 5, Att. E (T6 User Manual) at p. 6, Att. F (T1 User Manual) at pp. 3, 6.

**Response**: Objects on the ground that this statement is not supported by the cited materials. Subject to and without waiving this objection, denies because Hoverboards are designed, intended to be used, and are used as wheeled toys under entertainment technology sector. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer

reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Avers that any reference to "transportation" or "vehicles" in Swagtron® materials refers to other products sold by Swagtron®, such as electric scooters and electric bikes, and not Hoverboards; Hoverboards fall under entertainment technology sector. Pl. Ex. J (Deposition of Mr. Johnny Zhu) at 59:25-60:7; *See also* https://swagtron.com/ (last visited February 4, 2025). User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

26.     Swagtron user manuals refer to their associated hoverboard models as a "vehicle." *See* Def. Ex. 1, Sullivan Decl., Att. A (T881 User Manual) at p. 6, Att. B (T380 User Manual) at p. 6, Att. C. (T5 User Manual) p. 2, Att. D (T588 User Manual) at p. 17, Att. E (T6 User Manual) at pp. 6, 23, Att. F (T1 User Manual) at pp. 6, 20.

**Response**: Objects on the ground that this statement is not supported by the cited materials. Subject to and without waiving this objection, denies because Hoverboards are designed, intended to be used, and are used as wheeled toys under entertainment technology sector. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). ***User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." See Pl. Ex. Q and R.*** Avers that any reference to "transportation" or "vehicles" in

Swagtron® materials refers to other products sold by Swagtron®, such as electric scooters and
electric bikes, and not Hoverboards; Hoverboards fall under entertainment technology sector. Pl.
Ex. J (Deposition of Mr. Johnny Zhu) at 59:25-60:7; *See also* https://swagtron.com/ (last visited
February 4, 2025).

       27.     Swagtron acknowledges that hoverboards are a part of the LEV industry. *See*
Def. Ex. 1, Sullivan Decl., Att. G-4 ("Are Hoverboards Legal in the U.S.?") ("We've talked
about the legalities of LEVs before — from electric bikes to electric scooters — and the common
advice tends to be, [c]heck with your local laws.")).

       **Response**: Objects on the ground that this statement is not supported by the cited
materials and cited sentence does not mention or refer to Hoverboards. Subject to and without
waiving this objection, denies because the cited material does not refer to Hoverboards and reads
as follows: "We've talked about the legalities of LEVs before — from electric bikes to electric
scooters — and the common advice tends to be, Check with your local laws." Def. Ex. 1,
Sullivan Decl., Att. G-4 p 3/6. As such, the term "LEVs" in this statement refers to electric bikes
and electric scooters—having in-line wheels and a handlebar—and not Hoverboards.
Hoverboards are designed, intended to be used, and are used as wheeled toys under
entertainment technology sector. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits
clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to
be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy
departments of retail stores and are listed in toy categories of online stores along with other
wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are
purchased as wheeled toys for kids). User manuals for children's cars powered by a motor that

are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

28.     The distance that a person may travel on a hoverboard on a full charge depends upon the model.  The Swagtron T1, T6 and T380 have a range per charge of 7 to 12 miles.  Def. Ex. 1, Sullivan Decl., Att. B (T380 User Manual) p. 28, Att. E (T6 User Manual) p. 28, Att. F (T1 User Manual) p. 24.  The Swagtron T5 and T588 have a riding range of 7 and 8 miles, respectively.  Def. Ex. 1, Sullivan Decl., Att. C. (T5 User Manual) p. 20, Att. D (T588 User Manual) at p. 23.  The T881 has a riding range of 4.8 miles.  Def. Ex. 1, Sullivan Decl., Att. A (T881 User Manual) at p. 23.

**Response**: Objects on the ground that this statement is not supported by the cited materials because the cited materials do not describe the use of Hoverboards as "travel." Subject to and without waiving this objection, admits, except denies any inference that Hoverboards are designed, intended to be used, or are used for travel, because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

29.     Several factors may affect the actual range per charge.  These factors include: (1) speed and riding style; (2) topography, such as rough terrains or slopes; (3) the weight of the operator; and (4) environmental temperature.  Def. Ex. 1, Sullivan Decl., Att. A (T881 User Manual) at pp. 23-24, Att. B (T380 User Manual) at p. 28, Att. C. (T5 User Manual) pp. 20-21,

Att. D (T588 User Manual) at pp. 23-24, Att. E (T6 User Manual) at p. 28, Att. F (T1 User Manual) at pp. 24-25.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Subject to and without waiving this objection, admits, except denies any inference that Hoverboards are designed, intended to be used, or are used for travel, because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

30.      The Swagtron hoverboards contain a battery indicator that conveys information showing the status of the charge by changing colors, which informs the user that the travel range may be low.  Def. Ex. 1, Sullivan Decl. Att. A (T881 User Manual) at p. 23, Att. B (T380 User Manual) at p. 27, Att. C. (T5 User Manual) p. 19, Att. D (T588 User Manual) at p. 23, Att. E (T6 User Manual) at p. 27, Att. F (T1 User Manual) at p. 23.

**Response**: Objects on the ground that this statement is not supported by the cited materials because the cited materials do not describe the use of Hoverboards as "travel." Subject to and without waiving this objection, admits that Hoverboards contain a battery indicator that conveys information showing the status of the charge by changing colors, which informs the user that the riding range may be low, otherwise denies. Denies any inference that Hoverboards are designed, intended to be used, or are used for travel, because Hoverboards are designed, intended

to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

     31.     Swagtron user manuals show that two models of the imported hoverboards contain LED headlamps, taillights, and integrated movement indicators (including turning and braking signals).  *See* Def. Ex. 1, Sullivan Decl., Att. B (T380 User Manual) p. 7 (Sec. 1.3 What's New? "[c]olor-coded LED lights illuminate when you stop, go, or turn"), p. 15 (Sec. 2.4 Movement Indicators), Att. E (T6 Manual) p. 7 (Sec. 1.3 What's New? "[f]ront and rear color-coded LED lights illuminate when you stop, go, or turn"), pp. 14-15 (Sec. 2.4 Movement Indicators).

     **<u>Response</u>**: Objects on the ground that this statement is not supported by the cited materials because the cited materials do not describe components of Hoverboards as headlamps, taillights, turning signals, or braking signals. Subject to and without waiving this objection, admits that models T380 and T6 have "LED lights" that "illuminate when you stop, go, or turn," otherwise denies *See* Def. SOF 31. Denies any inference that Hoverboards are designed, intended to be used, or are used for transportation, because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other

wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

32.     Learning to ride a hoverboard takes time and practice, and they require skill to fully use them. Def. Ex. 1, Sullivan Decl., Att. G-1 (Swagtron FAQ "How to Ride a Hoverboard," stating "Admittedly, riding a hoverboard takes some getting used to. . . . With a little practice, you'll get used to the balance and the feel of the board while it moves." and "SWAG TIP: To help with balance, place the hoverboard next to a wall and use the wall to help you balance.", Att. G-3 (Swagtron FAQ "How to Stop on a Hoverboard," stating "Before you can get acrobatic with your board, you must be able to mount, dismount, balance, turn and stop. It's not as easy as it looks, at first." "In the very beginning, you'll want to start by using your board's training mode which will limit your speed, so you can get a feel for your board before you go all out.  This will stop you from accidentally taking off at full speed before you mastered slowing down and coming to a stop." "Learning to ride your new hoverboard takes time and practice[.]" and "Practice, Practice, Practice . . . Then Learn Tricks").

**Response**: Objects on the ground that this statement is not supported by the cited materials. Subject to and without waiving this objection, denies because Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

33.     Using hoverboards requires that the rider have "coordination, agility, and balance."  Def. Ex. 1, Sullivan Decl., Att. E (T6 User Manual) p. 9 ("This device requires coordination, agility, and balance.  Use your best judgment to determine if an individual can use the SWAGTRON safely.").

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82. Finally, Defendant's expert, Mr. Bert Reiner confirmed that pursuant to Consumer Product and Safety Commission (CPSC), ride-on toys are important for developing coordination. PSUF 63. As such, Hoverboards' characteristics are in line with ride-on and wheeled toys.

34.    Swagtron® hoverboards include up to three riding modes – "learning mode," "standard mode," and "advanced mode" – that allow the ride to be tailored to the user.  Def. Ex. 1, Sullivan Decl., Att. B (T380 User Manual) at pp. 8, 14, Att. C. (T5 User Manual) pp. 2, 3, 9-10, Att. D (T588 User Manual) at pp. 6, 12, Att. E (T6 User Manual) at pp. 7, 14, Att. F (T1 User Manual) at p. 7, 13-14, Att. G-1 (Swagtron FAQ "How to Ride a Hoverboard," stating at p. 1/8 that "Many hoverboards, like the swagBOARD Classic T5, have various skill-level modes, including 'Learning Mode' for beginners.  Take advantage of this solid feature, which limits the upper speeds of the board while increasing its responsiveness for more control" and at p. 3-4/8 "Most SWAGTRON® hoverboards—like the swagBOARD T5 Classic—have a **Learning Mode** that lowers the hoverboard's maximum speed and decreases its sensitivity.  This mode

helps you get the hang of maneuvering your board—kind of like training wheels on a bike."
(emphasis in red removed)).

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

35.    "Learning mode" is explained as being "[i]deal for new or inexperienced riders" and this mode regulates the maximum speed of the hoverboard to allow the user to practice balancing and general movement. *See* Def. Ex. 1, Sullivan Decl., Att. B (T380 User Manual) at p. 14, Att. C. (T5 User Manual) p. 10, Att. D (T588 User Manual) at p. 12, Att. F (T1 User Manual) at p. 14.

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further,

Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

36.      Swagtron explains that the learning mode allows the rider to "practice balance, hoverboard control and general movements so [the rider doesn't] accidentally take off at full speed and end up flat on [their] back on the concrete." Def. Ex. 6 (Swagtron FAQ "How Fast Are Hoverboards?").

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

37.      "Standard mode" is for experienced riders only as it removes the learning mode restriction and allows the hoverboard to reach maximum speeds. Def. Ex. 1, Sullivan Decl., Att. B (T380 User Manual) at p. 14, Att. C. (T5 User Manual) p. 10, Att. D (T588 User Manual) at p. 12, Att. F (T1 User Manual) at p. 14.

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are

used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

38.    The "advanced mode" is only available on certain models and can only be activated through the Swagtron app. *See* Def. Ex. 1, Sullivan Decl., Att. E (T6 User Manual) at p. 14.

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

39.    Depending on the model, these hoverboards have claimed maximum speeds of 6.8 to 13 mph (11kph to 20kph).  Pl. Ex. A (internal Ex. B – Swagtron® Catalog), ECF No. 31-3, p. 13-23 of 49; Def. Ex. 1, Sullivan Decl. Att. A (T881 User Manual) at p. 23, Att. B (T380 User Manual) at p. 27, Att. C. (T5 User Manual) p. 19, Att. D (T588 User Manual) at p. 23, Att. E (T6 User Manual) at p. 27, Att. F (T1 User Manual) at p. 23.

**Response**: Objects on the ground that this statement is not supported by the cited materials. Subject to and without waiving this objection, admits that depending on the model, Hoverboards have maximum speeds of 6.8 mph to 12 mph, otherwise denies. *See* Pl. Ex. A at pp. 13-23 of 49; Def. SOF 39. Denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

40.     There are significant risks of injury associated with the use of hoverboards, like falling forward or backward, which can cause elbow, ankle or wrist fractures, or even traumatic brain injury.  In 2015, U.S. News reported that 26,854 patients were admitted to U.S. hospitals due to falls and collisions involving hoverboards.  Def. Ex. 4 (Deposition of Norbert (Bert) Reiner (Reiner Depo.) Ex. 14 – U.S. News & World Report article "Hoverboard Accidents Send 27K Kids to the Hospital in 2Years" dated March 26, 2018.  According to according to research published in the study, Pediatric Hoverboard and Skateboard Injuries, found an estimated 26,854 hoverboard injuries treated in hospital emergency departments in the study period.  The study found that the most common types of injuries for hoverboard accidents were fractures, comprising of 40 percent of incidents; contusions, at 17 percent, and sprains and/or strains, at 13 percent, were also common.  "Although most injuries were minor and patients were quickly

discharged from the hospital, about 3 percent had to be admitted, according to the study.  Head injuries accounted for 14 percent of hospital admissions in hoverboard accidents[.]"  Def. Ex. 4, Reiner Depo. Ex. 14.

      **Response**: Objects on the ground that this statement constitutes hearsay within hearsay under FRE 805. Further objects on the ground that articles referenced herein have not been authenticated. Further objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is not supported by the cited materials. To the extent this statement is based on the testimony of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further, Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward Benjamin confirmed that

learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82. Finally, ride-on or wheeled

toys are responsible for 42 percent of toy-related injuries. *See Ride-On Toys Responsible for*

*Almost Half of Toy-Related Injuries*, https://www.spiveylaw.com/blog/ride-on-toys-responsible-

for-almost-half-of-toy-related-injuries/ (last visited February 4, 2025).

41.     Swagtron acknowledges potential risks with the use of the imported hoverboards

and provides "safe riding techniques."  *See* Def. Ex. 1, Sullivan Decl., Att. A pp. 20-21 (T881

User Manual IV – Safe Riding Techniques, providing cautions and warnings for use of the T881

hoverboard), Att. B pp. 23-24 (T380 User Manual providing cautions and warnings for use of the

T380 hoverboard), Att. C. pp. 16-17 (T5 User Manual IV- Safe Riding Techniques providing

cautions and warnings for use of the T5 hoverboard), Att. D pp. 20-21 (T588 User Manual), Att.

E pp. 22-24 (T6 User Manual IV- Safe Riding Techniques providing cautions and warnings for

use of the T6 hoverboard), Att. F pp. 20-21 (T1 User Manual IV – Safe Riding Techniques

providing cautions and warnings for use of the T1 hoverboard) (stating "We sincerely hope every

operator can ride the SWAGTRON® safely.  Think back to when you first learned to ride a bike,

drive a car, or skateboard.").

**Response**: Admits that Swagtron® materials have a section entitled "safe riding

techniques" when playing with Hoverboards, otherwise denies. None of the materials cited by

Defendant support Defendant's contention that "Swagtron acknowledges potential risks with the

use of the imported hoverboards." Denies any inference regarding the use of Hoverboards

because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl.

Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the

hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are

used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy

categories of online stores along with other wheeled toys, and customer reviews from "verified

purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further,

Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward

Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

42.     Swagtron® user manuals also warn that "Failure to use common sense and heed

the above warnings increases the risk of serious injury, or in very rare cases, death.  Use with

appropriate caution and serious attention to safe operation."  Def. Ex. 1, Sullivan Decl., Att. B

(T380 User Manual) at p. 24, Att. C. (T5 User Manual) p. 17, Att. E (T6 User Manual) at p. 24,

Att. F (T1 User Manual) at p. 21.

**Response**: Admits, except denies any inference regarding the use of Hoverboards

because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl.

Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the

hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are

used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy

categories of online stores along with other wheeled toys, and customer reviews from "verified

purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Further,

Defendant conceded that Hoverboards are easy to use, and Defendant's expert Mr. Edward

Benjamin confirmed that learning to ride a Hoverboard is not an issue. *See* PSUF 34, 44, 82.

Warnings referenced in this statement are in line with warnings outlined in user manuals for

children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory

Notes to Heading 9503, HTSUS. *See* Pl. Ex. Q and R.

43.     Hoverboards are sold in sporting goods retail stores or in sporting goods departments of retail stores.  *See* Def. Ex. 2, Declaration of Norbert (Bert) Reiner (Reiner Decl.), ¶¶ 26, 32, 33; Def. Ex. 7, Reiner Depo. Ex. 15 (photographs taken at retail stores).

**Response**: Objects on the ground that this statement is not supported by the cited material. None of the pictures taken by Mr. Riner depict the inside of sporting goods retail stores. None of the pictures taken by Mr. Bert Reiner show Hoverboards in their respective departments. The only picture that appears to have a department sign that reads "Sporting Goods" has been taken at Target. Def. Ex. 7, at p. 4 of 10. However, the sign appears to describe the department that begins after the sign not the department that precedes the sign. Def. Ex. 7, at p. 4 of 10. As such, Hoverboards are not sold in the sporting goods department at Target or any other retail store. Moreover, the Target picture clearly shows that Hoverboards are sold in the same section as tricycles for kids 2 years and older, which are clearly wheeled toys pursuant to Heading 9503, HTSUS. Def. Ex. 7, at p. 4 of 10. To the extent this statement is based on the testimony of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies because Hoverboards are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys. *See* Pl. Ex. G, pp. 50-77 of 90 (displaying Hoverboards along other wheeled toys in toy categories of major retailers); N, pp. 15-25 of 51

44

(pictures taken by Plaintiff's rebuttal expert Mr. Stephen Velte at major retailers showing that Hoverboards are not sold in Sporting Goods departments but are rather sold in toy departments along with other wheeled toys).

44.    Hoverboards are regulated as vehicles in several states and cities.  Def. Ex. 1, Sullivan Decl., Att. G-4 p 3/6 (Swagtron FAQ "Are Hoverboards Legal in the U.S.?" categorizing hoverboards as LEVs and stating "Hoverboards remain an effective and fun method of transportation, akin to roller blades or skateboards[.]"); Def. Ex. 2, Reiner Decl. ¶ 34.

**Response**: Objects on the ground that this statement is not supported by the cited material. Neither the Declaration of National Import Specialist Matthew Sullivan nor the Declaration of Bert Reiner state that "Hoverboards are regulated as vehicles in several states and cities." Mr. Sullivan's declaration does not have such a reference at all. Mr. Reiner states as follows in paragraph 34 of his declaration: "I reviewed and considered several ordinances regarding the use of hoverboards. The public use of hoverboards is regulated by several states, cities, and municipalities." However, there is no reference to "vehicles" and there is no reference to any specific regulations. Regardless, neither Mr. Sullivan nor Mr. Riener are qualified to testify about state or city regulations. To the extent this statement is based on the testimony of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies

because to the extent Hoverboards are regulated by states, cities, or municipalities they are referred to as "toy vehicles" in the regulations. *See* Pl. Ex. S and T.

45.     Swagtron advises hoverboard users that certain states regulate the use of hoverboards as LEVs.  Def. Ex. 1, Sullivan Decl., Att. G-4 p 3/6 (Swagtron FAQ "Are Hoverboards Legal in the U.S.?" categorizing hoverboards as LEVs and stating "Hoverboards remain an effective and fun method of transportation, akin to roller blades or skateboards[.]").

**Response**: Objects on the ground that this statement is not supported by the cited material. Subject to and without waiving this objection, denies because the cited material does not refer to Hoverboards and reads as follows: "We've talked about the legalities of LEVs before — from electric bikes to electric scooters — and the common advice tends to be, Check with your local laws." Def. Ex. 1, Sullivan Decl., Att. G-4 p 3/6. As such, the term "LEVs" in this statement refers to electric bikes and electric scooters—having in-line wheels and a handlebar—and not Hoverboards. To the extent Hoverboards are regulated by states, cities, or municipalities they are referred to as "toy vehicles." *See* Pl. Ex. S and T.

46.     Swagtron® user manuals warn users to "[n]ever ride your SWAGTRON® after consumption of alcohol, drugs, or while intoxicated.  You can be arrested for drunk driving." Def. Ex. 1, Sullivan Decl., Att. B (T380 User Manual) at p. 24 (capitalization normalized, emphasis omitted), Att. C. (T5 User Manual) p. 17 (capitalization normalized, emphasis omitted), Att. E (T6 User Manual) at p. 24 (capitalization normalized, emphasis omitted), Att. F (T1 User Manual) at p. 21 (capitalization normalized, emphasis omitted).

**Response**: Admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the

hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

47.     Within the toy industry, "wheeled toys" is a category that includes tricycles, scooters, pedal cars, pull-toys, push-toys, doll carriages, ride-on toys, and other toys marketed for use by children principally between one and eight years old. Def. Ex. 2, Reiner Decl. ¶ 13.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because the HTSUS subheading at issue here—9503.00.0090—does not require the article to be limited for use by children between one and eight years old and does not have any age restriction at all. Specifically, subheading 9503.00.0090, HTSUS, provides for "[t]ricycles, scooters, pedal cars and similar wheeled toys" *other than* "'[c]hildren's products' as defined in 15 U.S.C. § 2052." Other subheadings under Heading 9503, HTSUS, may require articles to meet the definition of "Children's products" as defined in 15 U.S.C. § 2052—intended for use by children under twelve—but not subheading 9503.00.0090, HTSUS. However, none of those other subheadings are at issue here. Assuming, arguendo, those other subheadings were at issue (they are not), this statement would still contradict the HTSUS and the statute referenced therein, because 15 U.S.C. § 2052(a)(2) defines a "children's product" as "a consumer product designed or intended primarily for children 12 years of age or younger," *not children principally between one and eight years old*. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires

because the term "wheeled toys" is a legal HTSUS term subject to the Court's interpretation. The Court is charged with interpreting the law, not the expert witness. *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations. That's a subject for the [C]ourt, not for testimonial experts. The only legal expert in a federal courtroom is the judge." (Citation omitted). To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies except admits that "wheeled toys" is a category that includes tricycles, scooters, pedal cars, pull-toys, push-toys, doll carriages, ride-on toys, as well as Hoverboards. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids).

48.     "Ride-on" toys generally have wide-spaced wheels that assist with balancing, and they are made with/or without pedals, hand-levers, and a seat, and they are used by applying

pressure of the foot against the pedals or the ground, or drawn or pushed by another person, or are driven by a simple motor. Def. Ex. 2, Reiner Decl. ¶ 14.

**Response**: Objects on the ground that the term "wide-spaced wheels" is undefined, vague, and ambiguous. Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Hoverboards are "ride-on" toys because Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Otherwise denies. Avers that ride-on toys are any toys that can be ridden on by kids of all shapes and sizes. *See also* https://rideontoyskids.com.au/kids-electric-toys/kids-ride-on-hoverboard/ (last visited February 6, 2025) (Hoverboards sold on the "Rid On Toys Kids" website).

49.    "Ride-on" toys include push toys, pedal cars, tricycles, and battery-operated tricycles.  Def. Ex. 2, Reiner Decl. ¶ 15.

**Response**: Objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because this case does not involve push toys, pedal cars, tricycles, and battery-operated tricycles. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that ride-on toys include push toys, pedal cars, tricycles, battery-operated tricycles, and Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys for kids to ride on. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids, and marketing pictures confirm that users (kids) ride on Hoverboards). Otherwise denies. Avers that ride-on toys are any toys that can be ridden on by kids of all shapes and sizes. *See also* https://rideontoyskids.com.au/kids-electric-toys/kids-ride-on-hoverboard/ (last visited February 6, 2025) (Hoverboards sold on the "Rid On Toys Kids" website).

50.     "Push toys" have four wheels, a handlebar, a back bar, and a seat, and they are manufactured and marketed for use by children between one and three years old.  These toys often can be used as walkers and later as riders.  Def. Ex. 2, Reiner Decl. ¶ 15.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because push toys are not at issue in this case. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits.

51.     "Ride on" toys have four wheels, a seat, and a handlebar, and children sit on them, use pressure from their feet on the ground to move forward or backward, and they are manufactured and marketed for use by children between the ages of one and four.  Def. Ex. 2, Reiner Decl. ¶ 15.

**Response**: Objects on the ground that this statement directly contradicts the "ride-on toys" definition in paragraph 48 of Defendant's SOF. *See* Def. SOF 48. Specifically, this statement limits the definition of "ride-on toys" to items having "four wheels, a seat, and a handlebar," restricts propulsion to the rider's feet, and assumes that "ride-on toys" are

"manufactured and marketed for use by children between the ages of one and four." In paragraph 48, Defendant did not indicate that "ride-on toys" must have four wheels but rather stated they have wheels that assist with balancing without referencing a specific number of wheels; Defendant also stated that "ride-on toys" are made with *or without hand-levers or seat*, and … "*are driven by a simple motor*" not only pushed by the rider's feet. Further, objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that Hoverboards are "ride-on" toys because Hoverboards are designed, intended to be used, and are used as wheeled toys for kids to ride on. See Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids, and marketing pictures confirm that users (kids) ride on Hoverboards). Otherwise denies. Avers that ride-on toys are any toys that can be ridden on by kids of all shapes and sizes. *See also* https://rideontoyskids.com.au/kids-electric-toys/kids-ride-

on-hoverboard/ (last visited February 6, 2025) (Hoverboards sold on the "Rid On Toys Kids" website).

52.     "Pedal cars" have four wide-spaced wheels, a seat, a steering wheel, and pedals, and they are manufactured and marketed for children ages two to four. "Pedal cars" are usually made in the form of miniature vehicles and propelled by means of pedals, hand levers or the feet, or by simply being pulled or pushed by another person. Def. Ex. 2, Reiner Decl. ¶ 15.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because pedal cars are not at issue in this case. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "pedal cars" is a legal HTSUS term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that a "pedal car" is "a four-wheeled vehicle that is operated by pedals, usually a child's toy." *See* https://www.collinsdictionary.com/dictionary/english/pedalcar (last visited February 7, 2025). Otherwise denies.

53.    Children's "tricycles" have a seat, handlebar, pedals, and three wheels, and children use the pedal to move.  Tricycles are used primarily by young children who require a sense of balance to operate.  Wide spaced wheels and more wheels make the tricycle easier to balance. Tricycles are manufactured and marketed to children ages two to eight.  Def. Ex. 2, Reiner Decl. ¶ 15.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because tricycles are not at issue in this case. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "tricycles" is a legal HTSUS term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that a "tricycle" is "a 3-wheeled vehicle propelled by pedals or a motor" *See* https://www.merriam-webster.com/dictionary/tricycle (last visited February 7, 2025). Otherwise denies.

54.     Scooters for children ordinarily have two or three wheels, a handlebar with a T- bar that may or may not be adjustable, a foot brake, a footplate, and they are used by applying direct pressure of one foot against the ground.  Scooters help young children (between two and five years old) with balance, steering, and coordination.  Def. Ex. 2, Reiner Decl. ¶ 16.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because scooters are not at issue in this case. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "scooters" is a legal HTSUS term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that a "scooter" is "a vehicle ridden usually while standing that consists of a narrow footboard mounted between or atop two wheels tandem, that has an upright steering handle attached to the front wheel, and that is moved by pushing with one foot." *See* *https://www.merriam-webster.com/dictionary/scooter* (last visited February 7, 2025). Otherwise denies.

55.     Wheeled toys are and have been designed, manufactured, and marketed for use by young children, usually between the ages of 12 months to eight years old.  Wheeled toys, such as tricycles, scooters, and pedal cars are designed to help children with physical and cognitive development.  These types of wheeled toys help children develop gross motor skills, coordination, and balance.  Def. Ex. 2, Reiner Decl. ¶ 19.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "wheeled toys" is a legal HTSUS term subject to the Court's interpretation. The Court is charged with interpreting the law, not the expert witness. *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations. That's a subject for the [C]ourt, not for testimonial experts. The only legal expert in a federal courtroom is the judge." (Citation omitted). To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies, except admits that the term "wheeled toys" should be defined and viewed by this Court as described in Plaintiff's motion for summary judgment and that Hoverboards are wheeled toys because Hoverboards are designed,

intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids, and marketing pictures confirm that users (kids) ride on Hoverboards).

56.     Hoverboards do not have any assistive devices, like a seat, additional wheels, handlebars, steering wheel, pedals, or physical brakes.  Steering and stopping are controlled by the rider shifting their bodyweight on the footpads.  Def. Ex. 2, Reiner Decl. ¶ 24.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "assistive device" is a legal term subject to the Court's interpretation. The Court is charged with interpreting the law, not the expert witness. *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations. That's a subject for the [C]ourt, not for testimonial experts. The only legal expert in a federal courtroom is the judge." (Citation omitted). To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's

testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, admits that steering and stopping are controlled by the rider shifting their bodyweight on the footpads. Otherwise denies. Specifically, denies that Hoverboards do not have any assistive devices because both of Defendant's purported expert witnesses—Mr. Benjamin and Mr. Reiner—confirmed that the electric motor and gyroscope are assistive devices within Hoverboards because they help with propulsion and balance. PSUF 60 and 77. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on Hoverboards pursuant to FRE 702.

57.    The Swagtron® catalog does not identify the Swagtron® hoverboards as being "toys" or "wheeled toys."  Def. Ex. 2, Reiner Decl. ¶ 27.

**Response**: Objects on the ground that this statement is not supported by the cited materials. To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving these objections, denies because all Hoverboard materials and pictures contained therein, including catalogs, identify kids riding Hoverboards

that are designed, intended to be used, and are used as wheeled toys. See Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids, and marketing pictures confirm that users (kids) ride on Hoverboards). Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on Hoverboards pursuant to FRE 702.

58. The T5 Swagtron™ Hands Free Smart Board User Manual does not refer to the T5 hoverboard as being a "toy" or "wheeled toy."  Def. Ex. 2, Reiner Decl. ¶ 28.

**Response**: To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. See FRE 702. Subject to and without waiving this objection, admits, except denies any inference regarding the use of Hoverboards because Hoverboards are designed, intended to be used, and are used as wheeled toys. See Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen,

confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because

they are sold in toy departments of retail stores and are listed in toy categories of online stores

along with other wheeled toys, and customer reviews from "verified purchasers" confirm that

Hoverboards are purchased as wheeled toys for kids). Denies that any inference can be drawn

from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are

not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify

as an expert on Hoverboards pursuant to FRE 702.

59.     The T5 Swagtron™ Hands Free Smart Board User Manual does not identify the T5

hoverboard as being intended for children under 12 years of age.  Def. Ex. 2, Reiner Decl. ¶ 28.

**Response**: Objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or

material to the legal issues presented in this case) because the HTSUS subheading at issue

here—9503.00.0090—does not require the article to be limited for use by children under 12

years of age. To the extent this statement is based on the Declaration of Bert Reiner, objects on

the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge,

skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or

other specialized knowledge that will help the trier of fact to understand the evidence or to

determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c)

Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr.

Reiner's opinion does not reflect a reliable application of the principles and methods to the facts

of the case. *See* FRE 702. Subject to and without waiving these objections, admits, except denies

any inference regarding the use of Hoverboards because Hoverboards are designed, intended to

be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I, N, O, U (these

exhibits clearly indicate that the inventor of the hoverboard, Shane Chen, confirmed that he

intended it to be a wheeled toy, Hoverboards are used as wheeled toys because they are sold in

toy departments of retail stores and are listed in toy categories of online stores along with other

wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are

purchased as wheeled toys for kids). Denies that any inference can be drawn from this statement

regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of

expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on

Hoverboards pursuant to FRE 702.

    60.    The T5 Swagtron™ Hands Free Smart Board User Manual refers to the T5

hoverboard as being a "vehicle," "riding product," and "self-balancing, personal transporter."

Def. Ex. 2, Reiner Decl. ¶ 28.

    **Response**: Objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or

material to the legal issues presented in this case). To the extent this statement is based on the

Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is

qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr.

Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to

understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based

on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and

methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and

methods to the facts of the case. *See* FRE 702. Subject to and without waiving this objection,

admits, except denies any inference regarding the use of Hoverboards because Hoverboards are

designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B, C, D, E, F, G, H, I,

N, O, U (these exhibits clearly indicate that the inventor of the hoverboard, Shane Chen,

confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled toys because

they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. Avers that any reference to "vehicle," "riding product," or "self-balancing, personal transporter." in Swagtron® materials refers to other products sold by Swagtron®, such as electric scooters and electric bikes, and not Hoverboards; Hoverboards fall under entertainment technology sector. Pl. Ex. J (Deposition of Mr. Johnny Zhu) at 59:25-60:7; *See also* https://swagtron.com/ (last visited February 4, 2025). User manuals for children's cars powered by a motor that are specifically listed as wheeled toys in the Explanatory Notes to Heading 9503, HTSUS, refer to such children's cars as "vehicles." *See* Pl. Ex. Q and R.

61.    Major hoverboard manufacturers like Swagtron®, Razor (Hovertrax), Segway (Ninebot), DGL (Hover-1), Jetson (Jetson), Shenzen Uni-Chic (Evercross), Zhejiang Qunying (TPS), Shenzen Uni-Sun (Veveline), and Zhejiang Taotao (Gotrax) market their hoverboards but do not describe their hoverboards as "toys" or "wheeled toys."  Def. Ex. 2, Reiner Decl. ¶ 30.

**Response**: To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods;

and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving this objection, denies because major Hoverboard manufacturers market their hoverboards as toys and wheeled toys in toy departments of retail stores and list Hoverboards in toy categories of online stores along with other wheeled toys. *See* Pl. Ex. G, pp. 50-77 of 90 (displaying Hoverboards along other wheeled toys in toy categories of major retailers); N, pp. 15-25 of 51 (pictures taken by Plaintiff's rebuttal expert Mr. Stephen Velte at major retailers showing that Hoverboards are not sold in Sporting Goods departments but are rather sold in toy departments along with other wheeled toys); *see also* Plaintiff's Response To Defendant's Cross-motion For Summary Judgment And Reply In Further Support Of Plaintiff's Motion For Summary Judgment ("Pl. Resp.") at 27-28. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on Hoverboards pursuant to FRE 702.

62.    Major toy manufacturers such as Mattel, Hasbro, Jakks-Pacific, Leap Frog, and Little Tikes do not manufacture or sell hoverboards.  Def. Ex. 2, Reiner Decl. ¶ 31.

**<u>Response</u>**: To the extent this statement is based on the Declaration of Bert Reiner, objects on the ground that Mr. Bert Reiner is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Reiner lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Reiner's testimony is not based on sufficient facts or data, (c) Mr. Reiner's testimony is not the product of reliable principles and methods; and (d) Mr. Reiner's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Subject to and without waiving this objection, denies

because major toy manufacturers do manufacture and sell hoverboards. *See Hasbro Nerf Hover Play Hoverboard, https://www.target.com/p/hasbro-nerf-hover-play-hoverboard/-/A-93870836* (last visited February 7, 2025). Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on Hoverboards pursuant to FRE 702.

63.    Toy stores and toy departments, such as Rogue Toys, Toy Shack, Trek Cycles, and Costco, did not contain hoverboards.  Def. Ex. 2, Reiner Decl. ¶ 32.

**Response**: Objects on the ground that this statement is irrelevant (*i.e.*, not pertinent or material to the legal issues presented in this case) because: (1) Rogue Toys is a small Las Vegas only store that mainly sells collectibles and is not a store where one would expect to purchase tricycles, scooters, pedal cars, hoverboards, or similar wheeled toys (https://roguetoys.com/); (2) Toy Shack is also a small Las Vegas only store that mainly sells collectibles and is not a store where one would expect to purchase tricycles, scooters, pedal cars, hoverboards, or similar wheeled toys (https://www.facebook.com/lasvegastoyshack/); (3) Trek Cycles is not a toy store at all and does not have a toy department (https://www.trekbikes.com/us/en_US/); (4) Costco is a membership-based warehouse club (not a toy store) that sells brand-name merchandise at lower prices than traditional retailers and does not sell hoverboards at all (https://www.costco.com/). Avers that Hoverboards are not sold along electric bikes or electric scooters at either Trek Cycles (https://www.trekbikes.com/us/en_US/) or Costco (https://www.costco.com/). Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Reiner testified that "hoverboards are not in [his] area of expertise" (Pl. Ex. L, 116 (117 of 222):19-23) and he is not qualified to testify as an expert on Hoverboards pursuant to FRE 702.

64.     None of the user manuals contained in the hoverboard boxes that were produced by 3BTech, or that are available on Swagtron's website, contain an image of a cartoon child on a hoverboard, stating "Kid's Choice Wheeled Toy." Def. Ex. 1, Sullivan Decl. ¶ 25; Def. Ex. 1, Att. A (T881 Swagtron® User Manual, Ver. 2.0, dated 08/21/18), Att. B (Swagtron® T380 Hoverboard User Manual, Ver. 2.0 dated 1/9/18), Att. C (undated T5 Swagtron™ Hands Free Smart Board User Manual), Att. D (T588 Swagtron® User Manual, Ver. 1.0, and dated 7/13/18), Att. E (Swagtron® User Manual, Ver. 1.0 06/31/20, Swagboard T6 Advanced Off-Road Hoverboard), Att. F (Swagtron® T1 Hands Free Smart Board).

**Response**: Objects on the ground that this statement is irrelevant. Subject to and without waiving this objection admits that while design features indicating that Hoverboards are "kids' choice wheeled toys" may not appear on all manuals, this is an additional branding solution developed by Hoverboards' manufacturer to advertise Hoverboards to kids as wheeled toys.

65.     A "motorcycle" is a vehicle with two in-line wheels (or three wheels if it has a sidecar) propelled by an internal-combustion engine or an electric motor, and it is steered by the rider with a handlebar from a saddle-style seat, and they can accommodate one or two riders. Def. Ex. 3, Benjamin Decl. ¶ 29.

**Response**: Objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "motorcycle" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a

fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr.

Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr.

Benjamin's opinion does not reflect a reliable application of the principles and methods to the

facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on motorcycles. Subject to and

without waiving these objections, admits that Merriam-Webster dictionary defines the term

"motorcycle" as "an automotive vehicle with two in-line wheels." *See* https://www.merriam-

webster.com/dictionary/motorcycle (last visited February 7, 2025). Otherwise denies.

66.    Hoverboards are substantially smaller than motorcycles, and they do not have the

same power or speed as motorcycles.  Def. Ex. 3, Benjamin Decl. ¶ 29.

**Response**: Objects to the extent that terms "substantially smaller," "same power," and

"speed" are undefined, vague, and ambiguous. Further objects on the ground that this statement

consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule

56.3(a) requires because the term "motorcycle" is a legal term subject to the Court's

interpretation. To the extent this statement is based on the Declaration of Edward Benjamin

(ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is

qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr.

Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact

to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not

based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable

principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of

the principles and methods to the facts of the case. *See* FRE 702. Mr. Benjamin is not an expert

on motorcycles. Subject to and without waiving these objections denies because Hoverboards

could be comparable to kid's electric motorcycles. *See HYPER GOGO: Hoverboards Vs Kids'*

*Electric Motorcycles - A Comprehensive Guide*, https://www.hypergogo.com/blogs/news/hyper-gogo-hoverboards-vs-kids-electric-motorcycles-a-comprehensive-guide (last visited February 7, 2025).

67.    A skateboard is a device with a platform/board and two sets of wheels (two in the front and two in the back) beneath it, the board is mounted on two "trucks," which are mechanical suspension system that allows the rider to move their weight from side-to-side to control the direction of the vehicle.  Def. Ex. 3, Benjamin Decl. ¶ 30.

**Response**: Objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "skateboard" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on skateboards. Subject to and without waiving these objections, admits that Merriam-Webster dictionary defines a "skateboard" as "a short board mounted on small wheels that is used for coasting and for performing athletic stunts." *See https://www.merriam-webster.com/dictionary/skateboard* (last visited February 7, 2025). Otherwise denies.

68.     A skateboard rider balances on top of the board and propels forward by pushing off with one foot. Def. Ex. 3, Benjamin Decl. ¶ 30.

**Response**: Objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "skateboard" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on skateboards. Subject to and without waiving these objections, admits that Merriam-Webster dictionary defines a "skateboard" as "a short board mounted on small wheels that is used for coasting and for performing athletic stunts." *See* *https://www.merriam-webster.com/dictionary/skateboard* (last visited February 7, 2025). Otherwise denies.

69.     Electric skateboards have a motor; however, they do not have a gyroscope or G-sensor.  Def. Ex. 3, Benjamin Decl. ¶ 30.

**Response**: Objects to the extent that the term "G-sensor" is undefined, vague, and ambiguous. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "skateboard" is a legal term subject to the Court's interpretation. To the extent this statement is

based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on skateboards. Subject to and without waiving these objections, admits that electric skateboards have a motor; however, denies that electric skateboards do not have a gyroscope or G- sensor because there are electric skateboards equipped with gyroscopes. *See Naver Labs Balancing Electric Skateboard with Gyroscope Sensors Offer Super-Stable Skateboard,* *https://www.tuvie.com/naver-labs-balancing-electric-skateboard-with-gyroscope-sensors-offer-super-stable-skateboard/* (last visited February 7, 2025).

70.    Although electric skateboards are steered the same way as non-electric skateboards, that is by shifting weight from side-to-side to change the direction of the truck, rather than having to kick, push, and brake using their feet, the electric skateboard rider relies upon a remote to control the board, *i.e.*, the remote communicates with the motor signaling the skateboard to go forward, slow down, or stop.  Def. Ex. 3, Benjamin Decl. ¶ 30.

**Response**: Objects on the ground that this statement is not "short and concise" as required by USCIT Rule 56.3(a) but is rather compound and confusing. Further objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "skateboard" is a legal term subject to

navigation
Case 1:21-cv-00026-JAR    Document 55-1    Filed 02/14/25    Page 70 of 72

the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr. Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr. Benjamin's opinion does not reflect a reliable application of the principles and methods to the facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on skateboards. Subject to and without waiving these objections, denies because there are electric skateboards equipped with gyroscopes steered in the same way as Hoverboards by leaning forward or backward or side to side. *See Naver Labs Balancing Electric Skateboard with Gyroscope Sensors Offer Super-Stable Skateboard, https://www.tuvie.com/naver-labs-balancing-electric-skateboard-with-gyroscope-sensors-offer-super-stable-skateboard/* (last visited February 7, 2025).

71.     Like the standard skateboard, electric skateboards are personal transporters.  Def. Ex. 3, Benjamin Decl. ¶ 30.

**Response**: Objects on the ground that this statement consists of a legal conclusion or legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term "skateboard" is a legal term subject to the Court's interpretation. To the extent this statement is based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr. Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a

fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr.

Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr.

Benjamin's opinion does not reflect a reliable application of the principles and methods to the

facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on skateboards. Subject to and

without waiving these objections, denies because nothing on record shows that skateboards are

personal transporters and the Merriam-Webster definition does not define skateboards as such.

72.     Although hoverboards and skateboards have wheels and are personal transporters,

hoverboards are not skateboards.  Def. Ex. 3, Benjamin Decl. ¶ 30.

**Response**: Objects on the ground that this statement consists of a legal conclusion or

legal argument and is not a statement of fact as USCIT Rule 56.3(a) requires because the term

"skateboard" is a legal term subject to the Court's interpretation. To the extent this statement is

based on the Declaration of Edward Benjamin (ECF No. 37-2), objects on the ground that Mr.

Edward Benjamin is not "[a] witness who is qualified as an expert by knowledge, skill,

experience, training, or education" because (a) Mr. Benjamin lacks scientific, technical, or other

specialized knowledge that will help the trier of fact to understand the evidence or to determine a

fact in issue, (b) Mr. Benjamin's testimony is not based on sufficient facts or data, (c) Mr.

Benjamin's testimony is not the product of reliable principles and methods; and (d) Mr.

Benjamin's opinion does not reflect a reliable application of the principles and methods to the

facts of the case. *See* FRE 702. Mr. Benjamin is not an expert on skateboards. Subject to and

without waiving these objections, denies that hoverboards are personal transporters because

Hoverboards are designed, intended to be used, and are used as wheeled toys. *See* Pl. Ex. A, B,

C, D, E, F, G, H, I, N, O, U (these exhibits clearly indicate that the inventor of the hoverboard,

Shane Chen, confirmed that he intended it to be a wheeled toy, Hoverboards are used as wheeled

toys because they are sold in toy departments of retail stores and are listed in toy categories of online stores along with other wheeled toys, and customer reviews from "verified purchasers" confirm that Hoverboards are purchased as wheeled toys for kids). Denies that hoverboards are not skateboards because hoverboards can be considered skateboards for purposes of Section 301 China tariff exclusions as explained in Plaintiff's briefs. Denies that any inference can be drawn from this statement regarding Hoverboards because Mr. Benjamin has no prior professional experience with Hoverboards and is not qualified to testify as an expert on Hoverboards pursuant to FRE 702. *See* PSUF 73, 74, 75.

Respectfully submitted,

Dated:    February 14, 2025    

_____

Serhiy Kiyasov, Attorney

Rock Trade Law LLC
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
312-824-6195 (telephone)
skiyasov@rocktradelaw.com (e-mail)

*Counsel For Plaintiff 3BTech, Inc.*